UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

PAUL T. EDWARDS,
             Plaintiff,

       v.                                CASE NO. 3:14-cv-1714 (VAB)

NORTH AMERICAN POWER
AND GAS, LLC,
             Defendant.

## **RULING ON DEFENDANT'S MOTION TO DISMISS**

Plaintiff, Paul T. Edwards, filed this Complaint against Defendant, North American Power and Gas LLC ("NAPG"), asserting claims that arise out of NAPG's business of supplying electricity to residential customers. Compl. ¶¶ 2-3, ECF No. 1. Mr. Edwards alleges that NAPG attracted new customers by promising low rates on electricity tied to the wholesale market rate and subsequently charged exorbitant prices, not reasonably related to the market rate. *Id.* ¶¶2-6. He claims that, in doing so, NAPG engaged in unfair and deceptive trade practices, in violation of the unfair trade practices laws of Connecticut, Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §42-110a *et seq.*, Maine, Maine Unfair Trade Practices Act ("UTPA"), Me. Rev. Stat. Ann. tit. 5, § 205-A *et seq.*, New Hampshire, the New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. § 358-A:1 *et seq.*, and Rhode Island, the Rhode Island Unfair Trade Practice and Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1 *et seq.* Compl. ¶ 52, ECF No. 1. He also makes claims of unjust enrichment and breach of the covenant of good faith and fair dealing. *Id.* ¶¶55-61, 63-68.

NAPG seeks to dismiss the entire case with prejudice under Federal Rule of Civil Procedure 12(b)(6).  Mot. To Dismiss, ECF No. 17.  For the reasons that follow, the Court **DENIES** the motion with respect to the CUTPA and breach of the covenant of good faith and fair dealing claims.  The Court **GRANTS** the motion without prejudice with respect to the claims under Maine's UTPA, the New Hampshire Consumer Protection Act, and the Rhode Island Unfair Trade Practice and Consumer Protection Act as well as the unjust enrichment claim.

## I.   FACTUAL ALLEGATIONS

Mr. Edwards alleges that, in the late 1990s and early 2000s, "many states" deregulated their electricity supply markets.  Compl. ¶ 13, ECF No. 1.  Before deregulation, large, regulated public utilities allegedly administered both electricity generation and distribution.  *Id.*  According to the Complaint, after deregulation the public entities continued to distribute power through transmission lines, but the business of power generation and supply was opened to competition.  *Id.* ¶¶ 13-15.  Mr. Edwards claims that the electricity market now consists of three groups of companies: (1) those that generate or create electricity, (2) those that distribute it via transmission lines, and (3) those that supply it, or sell it to retail customers.  *Id.* ¶15.

In this deregulated market, Mr. Edwards alleges that several companies, like NAPG, operate as "middlemen," purchasing power from generation companies and selling that electricity to end users at a "mark-up" on either fixed or variable rate terms.  *Id.* ¶¶17-20.  The prices these "middlemen" charge, including NAPG, are not regulated by the states of Connecticut, Rhode Island, Maine or New Hampshire.  *Id.*

¶ 18.  These companies also allegedly do not actually distribute the electricity they sell, which remains the role of the large public utilities, nor do they generate power, provide customer bills, or otherwise maintain infrastructure for the electricity business.  *Id.* ¶¶17, 32.  Because of their limited role, Mr. Edwards claims that these so-called "middlemen" companies like NAPG charge "exorbitant premiums without adding any value to the consumer whatsoever."  *Id.* ¶32.

Mr. Edwards claims that NAPG lured customers with a "teaser" rate, which was charged for a "set number of months." *Id.* ¶¶ 3, 21.  When the "teaser" rate expired, customers were automatically "rolled" into a variable-rate plan.  *Id.*  Mr. Edwards alleges that NAPG markets its variable-rate plan to consumers as being "correlated with the underlying wholesale market rate." *Id.* ¶¶ 23-26.  In particular, he quotes portions of NAPG's instructions to its sales representatives that explain the plan as "subject to change with market pricing, which means when market prices go down, so does the variable rate" and that consumers "will be paying a month-to-month, market-based variable rate that can fluctuate from time to time." *Id.* ¶¶23-24.  Consistent with these marketing materials, Mr. Edwards also claims that NAPG's Terms of Service provided that "[t]he variable rate may increase or decrease to reflect the changes in the wholesale power market." *Id.* ¶25.

In Mr. Edwards's view, "a reasonable consumer" would interpret NAPG's marketing representations and Terms of Service to mean that the NAPG's variable plan's rates would rise and fall with the wholesale market rates.  *Id.* ¶ 26.  He claims that NAPG's variable-rate plan, in reality, did the opposite, resulting in artificially high electricity prices that did not decrease when wholesale prices fell.  *Id.* ¶¶27-28,

31. He also includes a chart in his Complaint that shows the NAPG rate increased when the "average wholesale" rate decreased and that NAPG charged a substantial margin above the average wholesale rate from October 2013 to October 2014. *Id.* ¶28.

Mr. Edwards alleges that he resides in Connecticut and subscribed to NAPG's variable-rate plan around August 2013. *Id.* ¶¶8, 33. He alleges that he suffered "monetary damages" as a result of NAPG's pricing. *Id.* ¶35. In filing this lawsuit, Mr. Edwards also has indicated that he will seek to certify a class that as of the date of the Complaint consists of "[a]ll persons enrolled in a [NAPG] variable rate electric plan in connection with a property located within Connecticut, Rhode Island, New Hampshire and Maine." *Id.* ¶ 36.

## II.   STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, to state a plausible claim, a plaintiff's complaint must have "enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Although "detailed factual allegations" are not required, a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 555, 557.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[A] claim should only be dismissed at the pleading stage where the allegations are so general, and the alternative explanations so compelling, that the claim no longer appears plausible." *Arar v. Ashcroft,* 585 F.3d 559, 617 (2d Cir. 2009) (citing Fed. R. Civ. P. 8(a); *Twombly,* 550 U.S. at 556).

In determining whether the plaintiff has met this standard, the Court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff*. In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007); *Newman & Schwartz v. Asplundh Tree Expert Co., Inc.,* 102 F.3d 660, 662 (2d Cir. 1996) (citations omitted). In considering a motion to dismiss, "a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Newman & Schwartz,* 102 F.3d at 662 (citation and internal quotation marks omitted).

### III.    DISCUSSION

Mr. Edwards alleges claims under the unfair trade practice statutes of several states, breach of the covenant of good faith and fair dealing, and unjust enrichment. NAPG's Motion to Dismiss challenges the sufficiency of all of these claims under Rule 12(b)(6) and asks that the lawsuit be dismissed in its entirety with prejudice. Mot. To Dismiss 1, ECF No. 17-1; Fed. R. Civ. P. 12(b)(6). The Court will address each claim in turn.

## A.  COUNT ONE (UNFAIR TRADE PRACTICES STATUTES)

Mr. Edwards alleges claims under the unfair trade practices statutes of Connecticut, Rhode Island, New Hampshire, and Maine.  NAPG raises two arguments in its Motion to Dismiss with respect to these claims.  First, it argues that Mr. Edwards, as a resident of Connecticut only, lacks standing to assert claims under the other states' statutes.  Mot. To Dismiss 5-8, ECF No. 17-1.  Second, NAPG argues that Mr. Edwards has failed to state a CUTPA claim because he has not alleged an unfair trade practice or deceptive act.  *Id.* at 8-12.

### i.  STANDING

NAPG argues that because Mr. Edwards has only purchased electricity from NAPG in Connecticut, he only has standing to bring claims under CUTPA, and not under any of the other states' unfair trade practices statutes included in the Complaint.  *Id.* at 6-7.  Mr. Edwards responds that the question of standing cannot be considered now and should be considered at the class certification stage.  Opp Br. 20, ECF No. 24.  For the reasons that follow, the Court agrees with NAPG and grants its Motion to Dismiss on the claims under the Maine, New Hampshire, and Rhode Island unfair trade practices statutes.

Article III, Section 2 of the U.S. Constitution limits the jurisdiction of the federal courts to the resolution of cases and controversies.  *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) (citation omitted).  "In order to ensure that this 'bedrock' case-or-controversy requirement is met, courts require that plaintiffs establish their 'standing' as 'the proper part[ies] to bring' suit."  *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008) (citation

6

omitted) (alteration in original).  To have standing, "a plaintiff must demonstrate (1) a personal injury in fact (2) that the challenged conduct of the defendant caused and (3) which a favorable decision will likely redress." *Mahon*, 683 F.3d at 62 (citation omitted); *Warth v. Seldin,* 422 U.S. 490, 498-99 (1975) ("As an aspect of justiciability, the standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf.") (citation omitted).  "It is well established that 'a plaintiff must demonstrate standing for each claim [ ]he seeks to press.' Thus, *with respect to each asserted claim*, '[a] plaintiff must always have suffered a distinct and palpable injury to [him]self.' " *Mahon*, 683 F.3d at 64 (citations omitted) (emphasis in original).

Consistent with the Second Circuit's reasoning in *Mahon,* Mr. Edwards must show that he has standing personally to assert all of the claims in the Complaint at the case's inception, regardless of if and when a class is certified.  *Warth,* 422 U.S. at 498 ("[S]tanding imports justiciability… [it] is the threshold question in every federal case, determining the power of the court to entertain the suit."); *In re Appointment of Indep. Counsel,* 766 F.2d 70, 73 (2d Cir. 1985) ("Since the standing requirement is derived from Article III limitations on the federal courts' powers, it is the threshold issue in every case."); *see also In re Aggrenox Antitrust Litig.,* No. 3:14-md-2516 (SRU), --- F. Supp.3d ---, 2015 WL 1311352, at *18-19 (D. Conn. Mar. 23, 2015) (finding that *Mahon* reaffirmed the need to analyze standing claim by claim before class certification, unless the issue of class certification was dispositive,

because "'[a] federal rule cannot alter a constitutional requirement'") (alteration in original) (quoting *Mahon*, 683 F.3d at 64).

That standing analysis must proceed on a claim-by-claim basis. *See Davis v. Fed. Election Comm'n,* 554 U.S. 724, 734 (2008) ("[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought.") (internal quotation marks and citation omitted); *Lewis v. Casey,* 518 U.S. 343, 358 n.6 (1996) ("[S]tanding is not dispensed in gross… 'nor does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject.'") (citation omitted); *see also King Cnty., Wash. v. IKB Deutsche Industriebank AG,* Nos. 09 Civ 8387(SAS), 09 Civ. 8822(SAS), 2010 WL 2010943, at *1 (S.D.N.Y. May 18, 2010) ("A putative class representative lacks standing to bring a claim if [he] did not suffer the injury that gives rise to that claim, [and] [w]here multiple claims are brought, at 'least one *named* plaintiff must have standing to pursue each claim alleged.'") (citations omitted) (emphasis in original).  Thus, the fact that Mr. Edwards suffered an injury due to NAPG's actions in the state of Connecticut, and therefore has standing in Connecticut, is not dispositive of whether he has standing under the unfair trade practice statutes of the other states.

Mr. Edwards only alleges that he has purchased electricity from NAPG in Connecticut. Compl. ¶¶8, 33-35, ECF No. 1.  Thus, the Court must decide whether this allegation gives him standing to state claims under the New Hampshire, Maine

and Rhode Island unfair trade practices statutes.[1]  The Court concludes that it does

not.  Although Mr. Edwards does allege that NAPG operated its variable-rate plan in

New Hampshire, Maine, and Rhode Island, he does not claim that he subscribed

personally to the plan in any of those states.  Absent this allegation, he has failed to

plead that NAPG's conduct in any state other than Connecticut impacted him "in a

personal and individual way," which is required for the injury-in-fact aspect of

standing.  *See Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560 & n.1 (1992) (defining the

injury in fact aspect of standing to require a particularized injury or one that "affects

the plaintiff in a personal and individual way.") (citations omitted); *Mahon*, 683 F.3d

at 64 ("*with respect to each asserted claim,* '[a] plaintiff must always have suffered a

distinct and palpable injury to [him]self.'") (emphasis in original) (citations

omitted).

---

[1] As an aside, neither party claims that these statutes apply extraterritorially to conduct in Connecticut.  The New Hampshire statute requires that the "offending conduct" occur within the state's borders.  *Cf. Pacamor Bearings, Inc. v. Minebea Co.,* 918 F. Supp. 491, 504 (D.N.H. 1996) (noting that the New Hampshire Consumer Protection Act only creates liability for offending conduct that took place within the borders of New Hampshire).  The question of whether the Rhode Island and Maine statutes require offending conduct or injury within their boundaries is somewhat less clear, but the parties do not identify any case applying them to purely extraterritorial conduct and neither has the Court.  *See Farrell v. Employers' Liability Assur. Corp.,* 168 A. 911, 912 (R.I. 1933) ("We have held that extraterritorial force cannot be given to a statute of this state.") (citation omitted); *Marshall v. Scotia Prince Cruises Ltd.,* Adopting Recommended Ruling, No. 03-26-P-H, 2003 WL 22709076, at *7 (D. Me. Nov. 17, 2003) (finding that the Maine Deceptive Practices Act does not apply extra-territorially for reasons applicable to Maine's UTPA, namely because nothing in the Act indicates it was intended to be so applied); *see IMS Health, Inc. v. Mills,* 616 F.3d 7, 28 (1st Cir. 2010), *abrogated on other grounds by Sorrell v. IMS Health, Inc.,* 131 S. Ct. 2653 (2011) ("Maine , like other states, generally presumes its statutes do not apply extraterritorially in the absence of contrary indications of legislative intent.") (citing *Holbrook v. Libby,* 113 Me. 389 (1915).  Moreover, both Rhode Island's law and Maine's UTPA define "trade and commerce" as including "any trade or commerce directly or indirectly affecting the people of this State," indicating that some impact in each respective state is required.  Me. Rev. Stat. Ann. tit. 5, § 206(3); R.I. Gen. Laws § 6-13.1-1.

Without an allegation that he was personally injured in other states, Mr. Edwards's claim is essentially that un-named NAPG customers in Rhode Island, New Hampshire, and Maine suffered harm from its variable-rate plan. "Such a grievance, 'suffer[ed] in some indefinite way in common with people generally,' cannot demonstrate an injury-in-fact." *Karim v. AWB, Ltd.,* 347 F. App'x 714, 715 (2d Cir. 2009) (affirming dismissal of a claim for lack of standing because plaintiff failed to allege particularized injury-in-fact and, instead, alleged injury to the population of an entire country) (quoting *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 344 (2006)).

Accordingly, Mr. Edwards has not alleged that he suffered an injury-in-fact in New Hampshire, Maine and Rhode Island, because he has not subscribed to NAPG's energy plan in those states. Thus, he has failed to plead that he has standing to bring claims under the unfair trade practice statutes of those states. *See In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.,* 1 F. Supp.3d 34, 50 (E.D.N.Y. 2014)(finding that a plaintiff lacks standing to bring claims on behalf of a class "under the laws of states where the named plaintiffs have never lived or resided") (citations omitted), *reconsidered on other grounds,* 14 F. Supp.3d 99 (E.D.N.Y. 2014); *Simington v. Lease Fin. Grp., LLC,* No. 10 Civ. 6052 (KBF), 2012 WL 651130, at *9 (S.D.N.Y. Feb. 28, 2012) (noting that even in the context of a proposed class action "[p]laintiffs do not have an injury traceable to conduct that occurred in any other state than those in which they conduct business and thus, they cannot assert a claim under those states' consumer fraud statutes") (citations omitted).

Mr. Edwards's plan to seek class certification at some point during this lawsuit does not relieve him of the burden of pleading facts that show standing with

respect to all claims in his Complaint.  *See Lewis,* 518 U.S. at 357 ("That a suit may be

a class action... adds nothing to the question of standing, for even named plaintiffs

who represent a class must allege and show that they personally have been injured,

not that injury has been suffered by other, unidentified members of the class to

which they belong and which they purport to represent.") (citation and internal

quotation marks omitted); *see also Plumbers Pipefitters & MES Local Union No. 392*

*Pension Fund v. Fairfax Fin. Hldgs. Ltd.,* 886 F. Supp.2d 328, 339-340 (S.D.N.Y. 2012)

(dismissing a claim because a plaintiff did not have standing personally to assert it,

even though he had standing to assert other claims alleged in the complaint and

planned to represent a class, the members of which would have standing on this

particular claim) (citing *W.R. Huff Asset Mgmt. Co.,* 549 F.3d at 106).  Because he fails

to meet that burden at this time, the claims under New Hampshire, Maine, and

Rhode Island law must be dismissed.

  In support of its standing argument, NAPG also claims that its Terms of

Service varied across the states mentioned in the Complaint.  Mot. to Dismiss 7, ECF

No. 17-1.  Put another way, NAPG is essentially arguing that the allegations in the

Complaint are false or that there are facts omitted from the Complaint that are

germane to the lawsuit's resolution.  The Court does not and cannot grant the

motion based on this reasoning.  To prevail on a motion to dismiss, NAPG cannot

introduce facts outside of the complaint but rather must argue that, taking the

allegations in the Complaint as true, Mr. Edwards has failed to state a claim as a

matter of law.  *New York State Court Clerks Ass'n v. Unified Court System of the State*

*of New York,* 25 F. Supp.3d 459, 464 (S.D.N.Y. 2014) ("On a motion to dismiss... '[t]he

issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims…'") (quoting *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir. 1995)); *see also Newman & Schwartz,* 102 F.3d at 662 (noting that the Court may only consider allegations in the Complaint and documents incorporated therein in evaluating a motion to dismiss).  NAPG's argument that the terms of the contracts in the other states are different is not relevant to whether Mr. Edwards has stated a claim.  *See Iqbal*, 556 U.S. at 679 (finding that to survive a Rule 12(b)(6) motion, a claim must be facially plausible, meaning "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Notably, NAPG does not argue that any of the terms of service are different such that Mr. Edwards has failed to state claims under the other state unfair trade practice statutes.[2]

The Court, therefore, grants NAPG's Motion to Dismiss in part and dismisses the unfair trade practices claims based on the New Hampshire, Rhode Island and Maine statutes without prejudice.[3]

---

[2] NAPG's argument about the differences in terms of services across different states may also bear on the appropriateness of this case for class certification if the class involves plaintiffs from multiple states, but that is not the task before the Court as this time.  *See e.g., Sacred Heart Healthy Sys., Inc. v. Humana Military Healthcare Servs., Inc.,* 601 F.3d 1159, 1171, 1175-76, 1180, 1183 (11th Cir. 2010) (noting that "common questions rarely will predominate if the relevant terms vary in substance among the contracts" and concluding that a district court's decision to certify a class was an abuse of discretion because disputes of the various members of the class involved different contracts, which were interpreted according to different state laws); *Morangelli v. Chemed Corp.*, 275 F.R.D. 99, 109 (E.D.N.Y. 2011) (noting that the "necessity of applying different state laws can sometimes defeat class certification") (citation omitted).

[3] The Court notes, however, that it will not likely be appropriate to apply only Connecticut law to the class, if a claim is re-filed with plaintiffs with proper standing and a class is certified.  *See Phillips Petroleum, Co. v. Shutts,* 472 U.S. 797, 814-15, 821-22 (1985) (finding

ii. **CUTPA**

CUTPA provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Conn. Gen. Stat. §42-110b(a).  To state a claim under CUTPA, Mr. Edwards must plead that he (1) suffered an ascertainable loss of money or property, (2) that was caused by, (3) an unfair method of competition or an unfair or deceptive act in the conduct of any trade or commerce.  *See id;* Conn. Gen. Stat. §42-110g(a).  Mr. Edwards alleges that NAPG's conduct is both unfair and deceptive. Compl. ¶¶49-50, ECF No. 1.

To determine whether conduct is unfair under CUTPA, Connecticut courts apply the cigarette rule and look to "(1) [w]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise – in other words, is it within at least the penumbra of some common law, statutory or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons]."  *Naples v. Keystone Bldg. & Dev. Corp.*, 295 Conn. 214, 227-28 (2010)(citation and internal quotation marks omitted) (alterations in original).  A practice need not meet all three criteria to constitute an unfair practice under CUTPA, and "[a] practice may be unfair because of the degree to which it meets one

---

that it was inappropriate to apply only Kansas law to all members of a class, where 97% of them had no connection to Kansas whatsoever and noting that "Kansas must have a 'significant contact or significant aggregation of contacts' to the claims asserted by each member of the plaintiff class, contacts 'creating state interests,' in order to ensure that the choice of Kansas law is not arbitrary or unfair.") (citation omitted).

of the criteria or because to a lesser extent it meets all three." *Id.* (citation and internal quotation marks omitted).

For an act or practice to be deceptive[4] (1) "there must be a representation, omission or other practice likely to mislead consumers," (2) "consumers must interpret the message reasonably under the circumstances," and (3) "the misleading representation, omission or practice must be material – that is, likely to affect consumer decisions or conduct." *Bank of New York v. Nat'l Funding*, No. X01CV000171525S, 2005 WL 527749, at *5 (Conn. Super. Ct. 2005)(citing *Southington Savings Bank v. Rodgers*, 40 Conn. App. 23, 28 (Conn. App. Ct. 1995)); *see also Caldor, Inc. v. Heslin,* 215 Conn. 590, 597 (1990) (citation omitted). Deception under CUTPA includes a broader range of conduct than common-law claims for fraud or misrepresentation and does not require proof of intent. *Wilkins v. Yale Univ.*, No. CV106014646S, 2011 WL 1087144, at *4 (Conn. Super. Ct. Feb. 25, 2011) (citing *Muniz v. Kravis,* 59 Conn. App. 704, 713 (Conn. App. Ct. 2000)).  Mr. Edwards also "need not prove [and therefore need not plead] reliance or that the representation became part of the basis of the bargain." *Hinchliffe v. Am. Motors Corp.*, 184 Conn. 607, 617 (1981).

NAPG argues that Mr. Edwards has failed to allege a CUTPA claim because he has not stated facts from which a plausible inference may be drawn that NAPG engaged in an unfair or deceptive business practice.  Mot. To Dismiss 8, 10, ECF No.

---

[4] Because deception is a subcategory of unfairness, if Mr. Edwards has successfully alleged an unfair practice, he also has also successfully alleged a deceptive one. *See Wilkins v. Yale Univ.,* No. CV106014646S, 2011 WL 1087144, at *4 (Conn. Super. Ct. Feb. 25, 2011) ("A subset of unfair practices, recognized by our Supreme Court, is deceptive practices") (citing *Daddona v. Liberty Mobile Home Sales, Inc.,* 209 Conn. 243, 254 (1988)).

17-1.  Instead, NAPG reasons that Mr. Edwards has alleged that he got the benefit he bargained for as described by the contract, a variable rate for electricity.  *Id.* at 1-2, 8, 10-12.  Consequently, NAPG believes that finding a valid CUTPA claim here would require either rewriting the contract or improperly finding that buyer's remorse states a CUTPA claim.  *Id.*  NAPG also argues that the statements made in its marketing materials, which do not appear in the contract, cannot save the claim from dismissal because any reasonable reading of the contract is controlling and clarifies that the relationship between NAPG pricing and wholesale market pricing is not direct.  *Id.* at 8, 10-12.  Focusing on the graph available at paragraph 29 of the Complaint, NAPG also argues that Mr. Edwards himself alleges that NAPG's prices moved roughly in tandem with the wholesale market price, even when by contract they were not required to do so.  NAPG also mentions in a footnote that it finds the Complaint's pleadings on the relationship between Mr. Edwards and Connecticut to be sparse.  *Id.* 5 n.1.  The Court disagrees and denies the motion to dismiss Mr. Edwards's CUTPA claim.  Based on the facts alleged and making all inferences in favor of Mr. Edwards, as the Court must at this stage, the Court cannot find that Mr. Edwards's CUTPA claim is entirely implausible.

Whether NAPG's variable ran plan was an unfair or deceptive market practice is "a question of fact that is not readily susceptible to resolution on a motion to dismiss."  *Langan v. Johnson & Johnson Consumer Cos., Inc.,* No. 3:13-cv-01470 (JAM), --- F. Supp.3d ---, 2015 WL 1476400, at *3 (D. Conn. Mar. 31, 2015) (denying a motion to dismiss a CUTPA claim because the Court could not determine as a matter of law that the defendant's labels were not deceptive); *Naples*, 295 Conn.

at 228 ("It is well settled that whether a defendant's acts constitute… deceptive or unfair trade practices under CUTPA… is a question of fact.") (internal quotation marks and citation omitted) (alterations in original).  Thus, the Court need not and should not determine as a matter of law whether NAPG's conduct, as alleged, actually violated CUTPA.  Instead, the proper inquiry is whether Mr. Edwards has alleged sufficient facts to "raise a reasonable expectation that discovery will reveal evidence" supporting the claim. *Twombly*, 550 U.S. at 556.  While the question is a close one, the Court finds that Mr. Edwards has pled sufficient facts showing that he is entitled to discovery and must deny NAPG's motion to dismiss the CUTPA claim.

Mr. Edwards has claimed that one possible and reasonable understanding of both NAPG's marketing materials and contract was that NAPG's energy prices would reflect the wholesale market rates to some unknown extent.  Compl. ¶¶4, 25, 28, 31, ECF No. 1.  The Complaint also plausibly states that the rates NAPG charged were significantly higher than the wholesale market rate and did not always increase or decrease when the wholesale market rates did.  *Id.*  These allegations are sufficient at the motion to dismiss stage to show that Mr. Edwards is entitled to more discovery on whether NAPG was engaged in an unfair or deceptive business practice, because these are the kinds of behaviors that may fall under CUTPA.  *Cf. A-G Foods, Inc. v. Pepperidge Farm, Inc.*, 216 Conn. 200, 216 n.9 (1990) (observing that the Federal Trade Commission has identified as three of the four primary, but not exclusive, unfair practices as "withholding material information, [ ] making unsubstantiated advertising claims, [and] using high-pressure sales techniques.") (quoting *Am. Fin. Servs. v. F.T.C.*, 767 F.2d 957, 979 (D.C. Cir. 1985)); *see Sanborn v.*

16

*Viridian Energy, Inc.,* No. 3:14-cv-1731 (SRU), Mot. to Dismiss Hr'g Tr. 37:16-25 (D.

Conn. Apr. 1, 2015), *available at* Pl.'s Notice of Suppl. Authority, Ex. A, ECF No. 26-1

(finding that plaintiff stated a CUTPA claim on very similar facts to this case

regarding a "middleman" provider of energy whose contract stated "[y]our rate may

fluctuate month to month based on wholesale market conditions").  At this stage, the

Court simply does not have enough facts before it to know how prices were set by

NAPG.  Their actions may not have been unfair or deceptive, but that conclusion

cannot be reached before the close of discovery.

While the text of the contract itself does not indicate that NAPG prices would

definitively or precisely be linked with the wholesale market price, with or without

the marketing materials, it is plausible that a reasonable consumer would infer a

direct link between the two.  Indeed, there would be no conceivable reason for a

consumer to sign up for NAPG's energy plan if he did not believe he would receive a

better overall deal on his electricity, based on its competitive advantage in obtaining

prices in the energy marketplace.  *See* Compl. ¶3, ECF No. 1 (noting that NAPG lures

its consumers with "teaser rates").  Accordingly, Mr. Edwards Complaint raises a

plausible inference that NAPG's business practices could have been deceptive and,

therefore, could have run counter to "some established concept of unfairness" and

has satisfied the first prong of the cigarette rule at this stage.  *See e.g., James F.*

*Canning Agcy. v. Nationwide Ins. Co. of Am.*, No. 3:09-cv-1413 (MRK), 2010 WL

2698292, at *4 (D. Conn. Mar. 10, 2010) (finding that negligent misrepresentations

run contrary to public policy and therefore satisfy the first prong of the cigarette

rule) (citation omitted); *Urich v. Fish,* No. 360659, 2000 WL 1835382, at * 2 (Conn.

Super. Ct. Nov. 27, 2000) (observing that "a classic 'switch' technique, whereby a consumer is promised (and pays for) one thing, and is given quite another" constitutes an example of an unfair act under CUTPA) (citations omitted); *D'Amico v. LA Fitness,* No. FSTCV126013564S, 2013 WL 6912912, at * 5 (Conn. Super. Ct. Dec. 2, 2013) (finding that a claim by a fitness provider that they had "expertise and experience" in operating a safe fitness club when they hired inexperienced employees was a deceptive act under the three-prong *Caldor* test and, therefore, violated public policy and satisfied the first prong of the cigarette rule).

Mr. Edwards also has satisfied the second prong of the cigarette rule at this stage.  Depending on the context, telling customers one thing and doing another could well be unethical, immoral or unscrupulous business behavior.  *See Pusztay v. Allstate Ins. Co.,* No. FSTCV065002425S, 2009 WL 2357958, at *10 (Conn. Super. Ct. June 30, 2009) ("[A]llegations that the defendant [ ] intentionally made misrepresentations… satisfy the second prong of the cigarette rule, in that they are arguably indicative of 'immoral, unethical, oppressive, or unscrupulous' behaviors.") (citations omitted); *D'Amico,* 2013 WL 612912, at *6 ("The weight of authority in Connecticut holds that misrepresentations in the formation of a contract can be sufficiently aggravating circumstances to satisfy the requirement that such actions or omissions are immoral, unethical, oppressive or unscrupulous.") (citations omitted).  While there may be reasons (to be uncovered later during discovery) that NAPG's behavior was not immoral, unethical, oppressive or unscrupulous, the Court cannot find as a matter of law that it is not now.

NAPG argues that the language of contract precludes the finding of a CUTPA violation, because it did not represent that there would be an exact or precise link between the wholesale market price and NAPG's prices by using the term "may" in its contract. While literally true, the Court cannot find at this stage in the proceeding that use of this one term in its contract can absolutely shield NAPG from CUTPA liability. *See Langan,* 2015 WL 1476400, at *3 (rejecting defendant's arguments that the representations made on a sunscreen label were literally true and, therefore, not deceptive under CUTPA as a matter of law because they rested on only one of many possible interpretations of the language at issue) (citation omitted); *see also Cantonbury Heights Condominium Ass'n, Inc. v. Local Land Dev., LLC,* 273 Conn. 724, 742 (2005) ("[W]here the [contractual] language is ambiguous we must construe those ambiguities against the drafter.") (citation omitted). The language of the contract led consumers to believe reasonably that wholesale market pricing would be at least one factor that determined their pricing. Moreover, as mentioned above, other than the belief that pricing would be better overall, there was no reason for a consumer to sign up to receive electricity from NAPG. Depending on how NAPG was actually setting its prices, its conduct may well have been unethical, immoral, or unscrupulous.

Mr. Edwards also has made sufficient allegations to satisfy the third, substantial injury prong. To plead that an action caused "substantial injury," in satisfaction of the third prong, Mr. Edwards must show that the injury was substantial, that it was not outweighed by "any countervailing benefits to consumers or competition that the practice produces"; and that it is an injury the "consumers

themselves could not have reasonably avoided. " *A-G Foods, Inc.*, 216 Conn. at 216

(citation omitted).  He alleges that NAPG charged between two and four times the

average wholesale rate and that he paid these rates.  Compl. ¶¶31, 35, ECF No. 1.

While the Complaint does not provide a specific dollar amount that Mr. Edwards

paid, it did provide an example that an average family would have paid $65 more in

a given month if subscribed to NAPG's variable-rate plan, which would have

amounted to an extra $780 in the course of a year.  Compl. ¶32 n.2, ECF No. 1.  This

amount of monetary loss constitutes substantial injury under CUTPA, particularly if

it occurred on a mass scale, as the Complaint alleges.  *See e.g., Chesire Mortg. Serv.,*

*Inc. v. Montes*, 223 Conn. 80, 113 (1992) (finding that a charge of $490 did amount to

"substantial injury" and noting that CUTPA must be construed consistent with its

broad scope and remedial purpose); *see also Larsen Chelsey Realty Co.,* 232 Conn. at

492 ("CUTPA... and must be liberally construed in favor of those whom the

legislature intended to benefit.") (citations and internal quotation marks omitted).

NAPG does not directly suggest that these losses were outweighed by a

countervailing benefit to the consumer.  NAPG's argument that Mr. Edwards

received only what he bargained for (and essentially that he should have read the

contract more carefully because it included a "slew of caveats") implicitly suggests

that he could have avoided injury.  Mot. to Dismiss 11, ECF No. 17-1.  However, the

Court finds that the reasonable inference for a consumer to make in reading the

contract and/or the marketing materials is that NAPG's price would be correlated to

some extent with the wholesale market price. Accordingly, Mr. Edwards could not

have avoided injury, and he has successfully pled substantial injury.

Mr. Edwards also has alleged a sufficient link between himself and Connecticut to state a plausible claim for relief under CUTPA.  The Complaint states that he signed a contract with NAPG for the variable-rate plan and that he was a resident of Connecticut.  Compl. ¶¶ 8, 33-35, ECF No. 1.  An allegation has a sufficient connection to Connecticut for a claim to lie under CUTPA when either the violation "'is tied to a form of trade or commerce intimately associated with Connecticut,'" or where choice of law principles dictate that Connecticut law applies. *Cf. Victor G. Reiling Assocs. And Design Innovation, Inc. v. Fisher-Price, Inc.,* 406 F. Supp.2d 175, 200 (D. Conn. 2005) (citations omitted), *aff'd on reconsideration,* 409 F. Supp.2d 112 (D. Conn. 2006).  Although the allegations could admittedly be clearer, they raise a plausible inference that Mr. Edwards subscribed to the plan with respect to property he lived in, in the state of Connecticut and, therefore, that NAPG's allegedly deceptive trade or business practice occurred in the state of Connecticut.  *See Titan Sports, Inc. v. Turner Broadcasting Sys., Inc.* 981 F. Supp. 65, 71-72 (D. Conn. 1997) (denying a motion to dismiss a CUTPA claim and finding that the facts underlying the claim were sufficiently related to Connecticut because while the defendant's principal place of business was in Georgia, it aired allegedly deceptive television programs in Connecticut and the plaintiff who allegedly suffered harm from this action was doing business in Connecticut).

Finally, at oral argument on its Motion to Dismiss, NAPG's counsel provided details about how its business operates and, in particular, that the nature of the business made it impossible for its prices to move exactly in tandem with the wholesale market price, given the relatively small size of its customer base, the need

for NAPG to purchase enough energy for their customers from the wholesale market, and the fluctuating rate on the wholesale market.[5]  This argument, however, does not bear on whether Mr. Edwards has stated a claim, because it relies on facts outside of the Complaint.  *See Newman & Schwartz,* 102 F.3d at 662 (citation and internal quotation marks omitted) (noting that in deciding a motion to dismiss, a district court must limit itself to facts alleged, attached or incorporated into the complaint).  Indeed, this argument suggests that factual discovery is necessary to understand the nature of this business in determining whether NAPG's pricing was truly an unfair trade practice.

Accordingly, for all of the aforementioned reasons, the Court finds that Mr. Edwards has sufficiently alleged a CUTPA claim and denies NAPG's Motion to Dismiss with respect to this claim.

## B.  COUNT TWO (BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING)

NAPG argues that Mr. Edwards's allegations of bad faith are too conclusory to sustain a claim of breach of the covenant of good faith and fair dealing under Federal Rule of Civil Procedure 12(b)(6).  Mot. To Dismiss 12-15, ECF No. 17-1.  It reasons that no bad faith has been alleged, as the pricing that Mr. Edwards and other energy purchasers received is exactly what they bargained for.  *Id.* at 13-14.  The Court disagrees and finds that Mr. Edwards has sufficiently pled a cause of action for breach of the covenant of good faith and fair dealing.

---

[5] NAPG's counsel also noted that the public utilities with larger customer bases have a business advantage because they can purchase large quantities of electricity from the wholesale market far in advance of the time such electricity will actually be needed by their consumers.  This strategy insulates them somewhat from the risk of price fluctuations in the wholesale market.

The vast majority of contracts include an implied covenant of good faith and fair dealing, which operates as a rule of interpretation to ensure that rights under the contract are not unfairly impeded. *Magnan v. Anaconda Indus., Inc.,* 193 Conn. 558, 566 (1984) (noting that the Restatement (Second) of Contracts recognizes this covenant in every contract "without limitation") (citing Restatement (Second) of Contracts § 205 (1979)); *Gupta v. New Britain General Hosp.,* 239 Conn. 574, 598 (1996) ("Every contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement.") (citation and internal quotation marks omitted); *De La Concha of Harford, Inc. v. Aetna Life Ins. Co.*, 269 Conn. 424, 433 (2004) ("The covenant of good faith and fair dealing presupposes that the terms and purpose of the contract are agreed upon by the parties and that what is in dispute is a party's discretionary application or interpretation of a contract term.") (citation and internal quotation marks omitted). The Court finds no reason why the covenant would not apply to Mr. Edwards's agreement with NAPG.

"To constitute a breach of [this covenant], the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith." *Colon v. Commonwealth Annuity and Life Ins. Co.*, No. 3:08-CV-00079 (PCD), 2008 WL 2185923, at *2 (D. Conn. May 22, 2008) (internal quotation marks omitted) (quoting *De La Concha of Hartford, Inc.*, 269 Conn. at 433); *see also Magnan,* 193 Conn. at 567 (describing the covenant as a "rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended."); *Landry v.*

23

*Spitz,* 102 Conn. App. 34, 43 (Conn. App. Ct. 2007) ("'a party who evades the spirit of the contract… may be liable for breach of the implied covenant of good faith and fair dealing'") (quoting Williston, *Contracts* §63.22, p. 508 (4th ed. Lord 2002) (alteration in original)).  Mr. Edwards need not allege a breach of his agreement with NAPG in the "technical sense," but rather a deprivation of the benefit of his bargain through other means.  *See N. Am. Tech. Servs., Inc. v. VJ Techs., Inc.,* Civil Action No. 10 CV 1384(AWT), 2011 WL 4538069, at *4 (D. Conn. Sept. 29, 2011) (citation and internal quotation marks omitted).  Bad faith requires fraud, a "'design to mislead or deceive another,'" or "'a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's duties, but by some interested or sinister motive.'"  *De la Concha of Hartford, Inc.,* 269 Conn. at 433 (quoting *Habetz v. Condon*, 224 Conn. 231, 237-38 (1992)).

As discussed above, Mr. Edwards plausibly alleges that consumers reasonably understood that NAPG's variable-rate plan prices would reflect in some way the wholesale market price.  By failing to actually do this in practice, NAPG possibly denied Mr. Edwards what "he [ ] reasonably expected to receive under the contract."  *Colon*, 2008 WL 2185923, at *2.  Mr. Edwards also alleges that by charging a price between two and four times higher than and in fact, in no way related to the wholesale market price, NAPG sought to operate a "pure profit center" and acted in bad faith.  Compl. ¶¶27, 57-59, ECF No. 1; Opp. Br. 15, ECF No. 24.  He also argues that NAPG's "only variable cost" was the wholesale cost of power, because its operating costs were "relatively fixed standard business expenses."  *Id.* (citing Compl. ¶¶17-19, 32, ECF No. 1).  The Court finds that this is a plausible

24

allegation of bad faith.  *See Colon,* 2008 WL 2185923, at *2 (denying a motion to dismiss because "[i]t is not clear from the complaint that there are no circumstances fitting [the] description [of facts alleged in the complaint] that would be so egregious and demonstrative of dishonest purpose as to show bad faith on the part of Defendants."); *see also Sanborn,* Mot. to Dismiss Hr'g Tr. 39:7-12 (D. Conn. Apr. 1, 2015) (finding that "price gouging" satisfies the bad faith requirement for a claim of breach of the covenant of good faith and fair dealing).

While the contract left the price open to be set at NAPG's discretion with certain limitations, the covenant of good faith and fair dealing mandates that NAPG exercise that discretion reasonably by charging a commercially reasonable price. *See Economos v. Liljedahl Bros., Inc.*, 279 Conn. 300, 307 (2006) ("[M]odern contract principles of good faith and fair dealing recognize that even contractual discretion must be exercised for purposes reasonably within the contemplation of the contracting parties…"); *Warner v. Konover,* 210 Conn. 150, 154-55(1989) (observing that a party with contractually provided discretion must exercise that discretion "in a manner consistent with good faith and fair dealing."); *Artman v. Output Techs. Solutions E. Region, Inc.*, No. CV 000595362S, 2000 WL 992166, at *2 (Conn. Super. Ct. June 30, 2000) (noting that if a contract gives a party discretion, that discretion must be exercised "fairly in order to comply with the implied covenant of good faith and fair dealing"); *see also Marcus Dairy, Inc. v. Rollin Dairy Corp.*, Civil No. 3:05cv589 (PCD), 2008 WL 4425954, at *7 (D. Conn. Sept. 24, 2008) (finding that under the UCC, good faith requires charging a commercially reasonable price in an open price contract) (citing UCC §2-305, Cmt. 3, adopted by Connecticut in Conn.

25

Gen. Stat. §42a-2-305). In pleading that NAPG's prices were arbitrarily high and unreasonable, Mr. Edwards has, therefore, sufficiently alleged a claim of breach of the covenant of good faith and fair dealing.

### C. COUNT THREE (UNJUST ENRICHMENT)

NAPG argues that Mr. Edwards has failed to plead a plausible unjust enrichment claim because he has alleged the existence of a valid, enforceable contract. Mot. To Dismiss 15-16, ECF No. 17-1. It reasons that unjust enrichment is not available as a remedy where there is an enforceable express contract. *Id.* Mr. Edwards counters that he made his claim in the alternative, in case the Court voids or otherwise finds the contract between NAPG and its subscribers invalid. Opp. Br. 19, ECF No. 24.

"'[L]ack of a remedy under [a] contract is a precondition for recovery based upon unjust enrichment.'" *Alstom Power, Inc. v. Schwing Am., Inc.*, Civil No. 3:04cv1311 (JBA), 2006 WL 2642412, at *5 (D. Conn. Sept. 14, 2006) (quoting *Gagne v. Vaccaro*, 255 Conn. 390, 401 (2001)). A plaintiff, therefore, cannot plead a claim of unjust enrichment if he also pleads the existence of an express contract. *See id.* at *5-6; *Levy v. World Wrestling Entm't, Inc.,* Civil Action No. 3:08-01289 (PCD), 2009 WL 455258, at *2-3 (D. Conn. Feb. 23, 2009) (granting a motion to dismiss on an unjust enrichment claim and finding that an unjust enrichment claim could not be pled simultaneously with allegations indicating the existence of a valid, express contract) (citation omitted) ; *see also Meaney v. Conn. Hosp. Ass'n, Inc.,* 250 Conn. 500, 517-18 (1999) ("It is often said that an express contract between parties precludes recognition of an implied-in-law contract governing the same subject

matter.") (citations and internal quotation marks omitted).  Mr. Edwards has not claimed that the contract is void, illusory or otherwise unenforceable; he also has not alleged facts in support of these legal conclusions.  Thus, he has failed to allege facts necessary for an unjust enrichment claim and the claim must be dismissed without prejudice.

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Defendant's Motion to Dismiss on the unjust enrichment claim and the unfair trade practices claims brought under the Maine, New Hampshire, and Rhode Island statutes, without prejudice.  The rest of Defendant's Motion is **DENIED**.


**SO ORDERED** this 4th day of August 2015, at Bridgeport, Connecticut.


/s/ Victor A. Bolden
Victor A. Bolden
United States District Judge