# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

PAUL EDWARDS,
GERRY WENDROVSKY,
SANDRA DESROSIERS, and
LINDA SOFFRON, on behalf of themselves
and all others similarly situated,
    Plaintiffs,

   v.

NORTH AMERICAN POWER & GAS, LLC,
    Defendants.

No. 3:14-cv-01714 (VAB)

## RULING AND ORDER

Paul Edwards, on behalf of himself and all persons similarly situated (collectively "Plaintiffs"), filed the initial Class Action Complaint in this case on November 18, 2014. This case is one of several class actions pending in this District and throughout the country, alleging that North American Power & Gas, LLC ("NAPG" or "Defendant") falsely advertised low rates in order to induce customers into switching their energy provider. Plaintiffs claim that NAPG expressly breached its contracts with class members, as well as the covenant of good faith and fair dealing, by allegedly advertising its variable rates would fluctuate with the market but failing to do so. *See* Second Am. Compl. ¶¶ 65-76, ECF No. 63. Additionally, several of the plaintiffs allege violations of the Connecticut Unfair Trade Practices Act (CUTPA) on behalf of a putative sub-class.

Following settlement discussions between the parties in this action and those pending elsewhere, the parties have reached a settlement under which they intend to resolve five cases involving NAPG's alleged misrepresentations. *See generally* Class Action Settlement Agreement

("Settlement Agreement"), ECF No. 116-1. The proposed settlement would involve the claims of class members in eleven states for breach of contract and alleged violation of state consumer protection laws. After notifying the Court of the proposed settlement, Plaintiffs moved for preliminary approval on January 16, 2018. ECF No. 114.

Plaintiffs' motion seeks the following: (1) preliminary certification of a class under 23(b)(3) for settlement purposes; (2) preliminary approval of the Settlement; (3) authorization to disseminate the proposed Class Notice to members of the Settlement Class; and (4) a date and time for the Final Fairness Hearing.[1]

Upon reviewing the Settlement Agreement, all the filings submitted in connection with the motion, the information presented at the hearing, the Motion is **GRANTED**. The Court **FINDS, CONCLUDES, AND ORDERS** as follows:

## I.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      The Edwards Action

Mr. Edwards filed the initial Complaint in this lawsuit on November 18, 2014, as the sole named plaintiff. *See Compl.*, ECF No. 1. He sought to bring the lawsuit "on behalf of himself and all class of all similarly situated customers . . . in Connecticut, Rhode Island, New Hampshire, and Maine, arising out of [NAPG's] unfair, deceptive, unconscionable and bad faith billing . . . ." *Id.* ¶ 2.

NAPG moved to dismiss the complaint. The Court granted the motion in part. *See* Ruling on Motion to Dismiss, ECF No. 39. The Court found that Mr. Edwards lacked standing to bring claims under Maine's Unfair Trade Practices Act, New Hampshire's Consumer Protection Act, and Rhode Island's Unfair Trade Practice and Consumer Protection Act. *Id.* at 2. The Court

---

[1] On January 29, 2017, the Court held a hearing to consider the motion.

denied the motion to dismiss as to the CUTPA claims and the breach of the covenant of good faith and fair dealing. *Id*. The dismissal of the other claims was without prejudice, and Edwards subsequently moved to amend the complaint.

The current operative complaint, the Second Amended Complaint, was filed on June 3, 2016. *See* Second Am. Compl. ("SAC"), ECF No. 63. The Second Amended Complaint was filed on behalf of Edwards (a Connecticut citizen), Gerry Wendrovsky (a citizen of New York who owns property in Connecticut), Sandra Desrosiers and Linda Soffron (both citizens of New Hampshire). SAC ¶¶ 8-12. They allege that North American Power was an electric supplier, purchasing power on the wholesale market and selling it to consumers. *Id.* ¶ 21. They allege that NAPG charged a low promotional rate, fixed for several months, which then changed to a variable rate following the end of the introductory period. *Id.* ¶ 24. NAPG allegedly represented that the variable rate following the introductory rate would be based on the wholesale market rate, *id.* ¶ 25; instead, Plaintiffs claim, NAPG "increase[ed] the rates charged to class members when wholesale prices rose" and kept rates "at a level as much as ***double, triple or quadruple*** the wholesale market rates when the wholesale prices fell." *Id.* ¶ 31 (emphasis in original).

Plaintiffs argue that this pricing scheme represents a breach of the contracts signed between themselves and NAPG, *id.* ¶¶ 65-68, as well as a breach of the implied convenient of good faith and fair dealings. *Id.* ¶¶ 69-76. They allege these violations on behalf of a class of those similarly situated in Connecticut and New Hampshire. *Id.* ¶ 54. Additionally, the plaintiffs seek to certify a subclass of NAPG's Connecticut customers, alleging violations of the Connecticut Unfair Trade Practices Act (CUTPA). *Id.* ¶¶ 55, 77-84.

Discovery began, and Plaintiffs moved for class certification on May 24, 2017. *See* Pl. Mot. Class Cert., ECF No. 82. Before the Court could rule on the motion, however, both NAPG

and the Plaintiffs moved to stay the proceedings. *See* Def. Mot. to Stay, ECF No. 98. The motion

stated that "the Parties have agreed to a global mediation" to attempt to resolve several similar

matters pending against NAPG, including the *Edwards* matter. *Id.* at 1. The Court granted a stay.

Order, ECF No. 99.

On October 31, 2017, the parties informed the Court they were unable to reach a

settlement. *See* Joint Status Rep., ECF No. 102. The Court lifted the stay, Order, ECF No. 103,

and NAPG moved for summary judgment. *See* Def. Mot. Summ. J., ECF No. 105.

### B.    Other Actions

The *Edwards* action is not the only case currently pending that involves NAPG's alleged

misconduct. Three similar lawsuits are currently pending in the District of Connecticut. *Arcano*

*v. North American Power & Gas*, LLC, No. 3:16-cv-1921-WWE (D. Conn. filed October 31,

2016) ("Arcano Action"); *Tully v. North American Power & Gas, LLC*, No. 15-cv-00469-WWE

(D. Conn. filed March 31, 2015) ("Tully Action"); *Fritz v. North American Power & Gas, LLC*,

No. 3:14-cv-0634-WWE (D. Conn. filed May 6, 2014) ("Fritz Action"). In addition, another case

is currently pending in the Northern District of Illinois, *Zahn v. North American Power & Gas*,

LLC, No. 14-cv-8370 (N.D. Ill., filed October 24, 2014) ("Zahn Action") and the Southern

District of New York. *Claridge v. North American Power & Gas, LLC*, 15-cv-1261 (PKC)

(S.D.N.Y. filed February 20, 2015) ("Claridge Action").

The Fritz Action pertained to alleged violations of New Jersey's Consumer Fraud Act, as

well as contractual claims. The Tully Action pertained to alleged violations of the Rhode Island

Deceptive Trade Practices Act, the New Jersey Consumer Fraud Act, the Maryland Consumer

Protection Act, the Connecticut Unfair Trade Practices Act, the Maine Unfair Trade Practices

Act, the New Hampshire Consumer Protection Act, the Georgia Fair Business Practices Act, the

Ohio Consumer Sales Practices Act, the Pennsylvania Unfair Trade Practices and Consumer

Protection Law, and the Texas Deceptive Trade Practices Act, among state law claims. The

Arcano action alleged violations of the Rhode Island Unfair Trade Practices and Consumer

Protection Act, as well as contractual claims. The Tully and Fitz cases were consolidated on June

23, 2015. The Arcano case was originally consolidated on June 20, 2016. The court formally

severed the Arcano case from the other two, but stayed it on request of the parties pending the

resolution of the Tully and Fritz actions. The court then stayed the consolidated Tully and Fritz

actions pending settlement negotiations, and then administratively closed the cases.

The Claridge Action, filed on behalf of New York consumers, alleged violations of New

York's deceptive trade practices law. *See Claridge v. N. Am. Power & Gas, LLC*, No. 15-cv-

1261 (PKC), 2016 WL 7009062, at *1 (S.D.N.Y. Nov. 30, 2016). On November 30, the court in

*Claridge* certified a class of "all New York North American Power & Gas, LLC customers who

paid North American Power & Gas, LLC's variable rate" on or after February 20, 2012. *Id.* The

parties in *Claridge* also sought the court's preliminary approval of a settlement that would

resolve all the pending NAPG actions and certify a nation-wide class of NAPG customers. The

court rejected that proposal, but approved a later settlement agreement pertaining to New York

customers. *See* Order, *Claridge v. N. Am. Power & Gas, LLC*, No. 15-cv-1261 (PKC), ECF No.

139 (S.D.N.Y. March 13, 2018).

The *Zahn* Action appears to assert causes of action on behalf of Illinois consumers. Pls.

Mem. at 6. The district court initially granted NAPG's motion to dismiss, but on appeal the

Seventh Circuit chose to certify a question to the Illinois Supreme Court and requested that the

court determine if the Illinois Commerce Commission ("ICC") would have exclusive jurisdiction

over the claim. *Id.* The Illinois Supreme Court held that the ICC did not have exclusive

jurisdiction and the Seventh Circuit then reversed the district court decision. The *Zahn* Action is currently stayed pending approval of the settlement at issue here. *Id.*

### C. Settlement Agreement

On December 20, 2017, the parties informed the Court at a telephonic status conference that they had reached a preliminary agreement to settle the case. *See* Order, ECF No. 113. Plaintiffs then moved for preliminary settlement approval. *See* Pls. Mot. for Prelim. Approval, ECF No. 114.

In their filing, Plaintiffs noted that the parties began discussing settlement of the *Fritz* Action in 2015. Pls. Mem in Support (Pls. Mem.) at 7, ECF No. 115. The parties attempted mediation in December 2015 and, again in February 2016, but neither resulted in a settlement. *Id.* They tried again, unsuccessfully, to mediate settlement in February 2017. *Id.* Likewise, the *Edwards* Action attempted to mediation a month later and the parties also were unsuccessful. *Id.*

On June 27, 2017, the parties appeared to reach a settlement for the *Fritz* and *Claridge* cases, and sought preliminary approval in the Southern District of New York, where *Claridge* was then pending. *Id.* at 8. *Edwards* counsel opposed; the Court ultimately denied the motion for preliminary approval. *Id.* Finally, the parties in all actions agreed to mediate jointly and, after two mediation sessions, entered into a settlement on January 16, 2018. *Id. See also* Class Action Settlement Agreement ("Settlement Agreement"), ECF No. 116-1.

The settlement seeks to resolve five separate cases: *Edwards v. North American Power & Gas*, No. 3:14-cv-01724 (D. Conn. filed November 18, 2014); *Arcaro v. North American Power & Gas, LLC*, No. 3:16-cv01921-WWE (D. Conn. filed October 31, 2016); *Tully v. North American Power & Gas, LLC*, No. 15-cv-00469-WWE (D. Conn. filed March 31, 2015); *Fritz v. North American Power & Gas, LLC*, No. 3:14-cv-0634-WWE (D. Conn. filed May 6, 2014); and

*Zahn v. North American Power & Gas, LLC*, No. 14-cv-8370 (N.D. Ill., filed February 20,

2015). *See* Settlement Agreement § I. The parties stated that they "recognize and acknowledge

the benefits of settling these cases" and defined the class as "all Persons who were NAPG

Variable Rate Customers during the Class Period in Connecticut, Illinois, Maryland, Maine, New

Hampshire, New Jersey, Ohio, Pennsylvania, Rhode Island, Georgia or Texas." Settlement

Agreement ¶ 2.11. The class period is defined as between February 20, 2012 through June 5,

2017. *Id.* ¶ 2.13. The settlement agreement sets out a series of procedures for its approval, and

noted that, while a class should be certified for settlement purposes, Defendants would reserve

the right to challenge class certification if the Court denied preliminary approval of the

agreement. *Id.* § IV.

      The agreement provides that NAPG customers who properly file a claim will be given

$.00351 per kilowatt hour if they are variable rate customers receiving electric supply or $.0195

per therm if they receive natural gas supply, with a minimum benefit of $2.00. *Id.* ¶ 5.1. The total

benefit, however, "payable by NAPG shall be subject to a $16,053,000 cap. In the event that the

value of the Benefits claimed exceeds $16,053,000, the Benefit payable to each NAPG Variable

Rate Customer will be reduced *pro rata* based on the individual's electric supply and/or natural

gas supply use while on a variable rate plan." *Id.* Named plaintiffs would receive up to $5,000 as

class representatives, and attorney's fees would be capped at $3,699,000. *Id.* ¶ 7.5.

      Parties also agreed to release claims, defined as:

> any and all claims, demands, rights, damages, obligations, suits,
> debts, liens, contracts, agreements, judgments, expenses, costs,
> liabilities, and causes of action of every nature and description,
> including claims for attorneys' fees, expenses and costs, whether
> known or unknown, suspected or unsuspected, existing now or
> arising in the future that (a) is or are based on any act, omission,
> inadequacy, misstatement, representation, harm, matter, cause or
> event whatsoever that has occurred at any time from the beginning

of time up to and including the end of the Class Period and (b) arise
from or are related in any way to this lawsuit or class action.

*Id.* ¶ 2.34.

## II.    STANDARD OF REVIEW

Rule 23(e) requires that "[t]he claims, issues, or defenses of a certified class may be
settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P.
23(e). Thus, "[b]efore reaching the merits of the proposed settlement," this Court "must first
ensure that the settlement class, as defined by the parties, is certifiable under the standards of
Rule 23(a) and (b)." *Bourlas v. Davis Law Associates*, 237 F.R.D. 345, 349 (E.D.N.Y. 2006); *see
also Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006) (holding that Rule 23(a)
and (b) analysis is independent of Rule 23(e) fairness review).

"Rule 23(a) states four threshold requirements applicable to all class actions: (1)
numerosity (a 'class [so large] that joinder of all members is impracticable'); (2) commonality
('questions of law or fact common to the class'); (3) typicality (named parties' claims or defenses
'are typical ... of the class'); and (4) adequacy of representation (representatives 'will fairly and
adequately protect the interests of the class')." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591,
613 (1997) (quoting Fed. R. Civ. P. 23(a)). "In addition to satisfying Rule 23(a)'s prerequisites,
parties seeking class certification must show that the action is maintainable under Rule 23(b)(1),
(2), or (3)." *Id.* at 614.

These requirements apply equally to "conditional certification of a class for settlement
purposes." *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157 (E.D.N.Y. 2009); *see also
Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006)
("Certification of a class for settlement purposes only is permissible and appropriate, provided
these [Rule 23(a) and (b) ] standards are met."). The settlement-only class certification inquiry

requires this Court to "demand undiluted, even heightened, attention in the settlement context" to Fed. R. Civ. P. 23's "specifications . . . designed to protect absentees by blocking unwarranted or overbroad class definitions." *Amchem Prod., Inc.*, 521 U.S. at 620.

"Preliminary approval of a class action settlement, in contrast to final approval, 'is at most a determination that there is what might be termed "probable cause" to submit the proposal to class members and hold a full-scale hearing as to its fairness.'" *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 101 (D. Conn. 2010) (quoting *In re Traffic Executive Association–Eastern Railroads*, 627 F.2d 631, 634 (2d Cir.1980)); *see also* 4 NEWBERG ON CLASS ACTIONS § 13.10 (5th ed. 2017) ("Preliminary approval is thus the first stage of the settlement process, and the court's primary objective at that point is to establish whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing. . . . the general rule is that a court will grant preliminary approval where the proposed settlement is neither illegal nor collusive and is within the range of possible approval.") (internal quotation marks omitted).

## III.    DISCUSSION

Plaintiffs' motion seeks preliminary certification of a settlement class, preliminary approval of the settlement, authorization to disseminate the proposed class notice to members of the settlement class, and a date and time for the Final Fairness Hearing. The Settlement Agreement provides for class settlement of plaintiffs located in eleven states. Defendant NAPG has continued to oppose class certification and the allegations raised in this lawsuit. NAPG, however, does not object to certification of a class for settlement purposes only.

As discussed in greater detail below, the Court finds for the purposes of preliminary approval, that the proposed settlement, as set forth in the Parties' Settlement Agreement, is fair,

reasonable, adequate, and in the best interest of the class. The Court further finds that the

Settlement Agreement was entered into at arm's length by highly experienced counsel. The

Court therefore preliminarily approves the proposed Settlement.

### A.    Certification of the Settlement Class

Plaintiffs move for certification of a class for settlement purposes under Federal Rule of

Civil Procedure 23(a) and 23(b)(3). The parties seek to certify the following class:

> All persons who at any time from February 20, 2012 to June 5, 2017
> were customers of NAPG and paid NAPG variable rates for
> electricity and/or natural gas in Connecticut, Illinois, Maryland,
> Maine, New Hampshire, New Jersey, Ohio, Pennsylvania, Rhode
> Island, Georgia or Texas.
>
> Excluded from the Settlement Class are: North American Power &
> Gas, LLC; any of its parents, subsidiaries, or affiliates; any entity
> controlled by either of them; any officer, director, employee, legal
> representative, predecessor, successor, or assignee of North
> American Power & Gas, LLC; any person enrolled in a NAPG
> affinity program; any person who has previously released claims
> that will be released by this Settlement; and federal, state, and local
> governments (including all agencies and subdivisions thereof, but
> excluding employees thereof) and the judges to whom the Actions
> are assigned and any members of their immediate families.

Pl. Mem. at 19.[2]

---

[2] At this stage, preliminary certification is appropriate because claims here would "focus
predominantly on common evidence" to determine whether NAPG was liable and rest on breach
of contract claims where there is not significant variation. *In re U.S. Foodservice Inc. Pricing
Litigation*, 729 F.3d 108, 125 (2d Cir. 2013) (affirming certification of nationwide class
involving state law breach of contract claims); *see Phillips Petroleum Co. v. Shutts*,472 U.S. 797,
814 (1985) ("The interests of the absence plaintiffs are sufficiently protected by the forum State
when the plaintiffs are provided with a request for exclusion that can be returned within a
reasonable time to the court."); *see also TBK Partners, LTD. v. Western Union Corp.*, 675 F.2d
456, 460 (2d Cir. 1982) ("As long as the overall settlement is found to be fair and class members
were given sufficient notice and opportunity to object to the fairness of the release, we see no
reason why the judgment upon settlement cannot bar a claim that would have to be based on the
identical factual predicate as that underlying the claims in the settled class action."); *Brown v.
Wells Fargo Bank, N.A.*, 25 F.Supp.3d 144, 150-51 (D.D.C. 2014) (granting preclusive effect to
a class settlement even though no plaintiff had standing to bring state consumer protection law
claims and noting that "to deny a nationwide class action settlement the ability to release related

Under Rule 23, the class must also be ascertainable. *In re Initial Public Offerings Securities Litigation*, 471 F.3d 24, 30, 44-45 (2d Cir. 2006). Additionally, Rule 23(a) of the Federal Rules of Civil Procedure requires that any putative class be "so numerous that joinder of all members is impracticable;" that "there are questions of law or fact common to the class;" that the representative parties and their claims and defenses are typical of the class as a whole; and that "the representative parties will fairly and adequately protect the interests of the class." Finally, Rule 23(b)(3) of the Federal Rules of Civil Procedure requires that, before certifying a class, a court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

For the purposes of preliminary approval, the Court makes the following findings:

1. The Settlement Class appears ascertainable. The class is defined solely with reference to objective criteria. Additionally, it is administratively feasible to determine class membership during the Class Period: NAPG has maintained identifying information — names, addresses, and the number of bills received — for all of its customers who purposed electricity or natural gas.

2. The putative class appears "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). Throughout the class period, thousands of customers in eleven states purchased electricity or natural gas from NAPG. The class therefore is sufficiently numerous to meet Rule 23's strictures.

---

state law claims, even on behalf of those class members not residing in the states with a named plaintiff, could undermine the efficiency of class actions.").

3. Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."). There appear to be common questions, capable of class wide resolution. These include whether the Defendant's representations about rates were misleading and deceptive and whether the Defendant's rates were consistent with what they had promised and the contract each customer signed.

4. Representative parties and their claims and defenses are typical of the class as a whole. Fed. R. Civ. P. 23(a)(3). Here, the class members claims arise from alleged misrepresentations that would be shared across the class and ultimately arise from the same conduct by the Defendant. Each representative party is a member of the Settlement class and allege to have been damaged by the same conduct as the class more broadly. Additionally, the claims of the class and class representatives share corresponding legal theories.

5. Rule 23(a)(4) of the Federal Rules of Civil Procedure requires that the representative parties "will fairly and adequately protect the interests of the class." Lead counsel is experienced and has litigated complex class actions in the past. Additionally, the Court is not aware of any conflicts between the representative parties, class counsel, and the claims of the claims.

6. Under Federal Rule of Procedure 23(b)(3), the Court also finds that the common questions of law and fact likely predominate over any question affecting only

individual members of the settlement class. Additionally, a class action is superior to

other available methods for the fair and efficient adjudication of this controversy.

As a result, the Court conditionally certifies a settlement class as defined above.

The Court appoints Paul Edwards, Gerry Wendrovsky, Sandra Desrosiers, Linda Soffron,

David Fritz, John Arcaro, Michael Tully, and Peggy Zahn as Representatives of the Settlement

Class.

The Court appoints D. Greg Blankinship and Todd S. Garber of Finkelstein, Blankinship,

Frei-Pearson & Garber, LLP, Robert Izard, Craig Raabe and Seth Klein of Izard Kindall &

Raabe LLP, Matthew R. Mendelsohn of Mazie Slater Katz & Freeman, LLC, and Matthew D.

Schelkopf of McCune Wright Arevalo LLP to act as Class Counsel to the Settlement Class.

The Court approves, as to form and content, the Short Form Notice and Long Form

Notice attached as Exhibits B and C, respectively, to the Settlement Agreement, and finds that

the distribution of the Settlement Notice substantially in accordance with Section VIII of the

Settlement Agreement meets the requirements of Federal Rule of Civil Procedure No. 23(c) and

due process, and is the best notice practicable under the circumstances and shall constitute due

and sufficient notice to all persons entitled thereto.

**B.      Preliminary Approval of the Terms of the Settlement**

As one court in this District noted:

> Preliminary approval of a class action settlement, in contrast to final
> approval, is at most a determination that there is what might be
> termed 'probable cause' to submit the proposal to class members
> and hold a full-scale hearing as to its fairness . . . . As such, it is
> appropriate where it is the result of serious, informed, and non-
> collusive negotiations, where there are no grounds to doubt its
> fairness and no other obvious deficiencies, and where the settlement
> appears to fall within the range of possible approval.

*Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 101 (D. Conn. 2010) (granting preliminary approval of settlement agreement in securities class action). *See also* 4 Newberg on Class Actions § 13:13 (5th ed.) ("The general test—holding that a settlement will be preliminarily approved if it 'is neither illegal nor collusive and is within the range of possible approval'—contains both procedural and substantive elements. The procedural element focuses on the nature of the settlement negotiations and the possibility of collusion, while the substantive element focuses on the terms of the agreement itself.").

The proposed settlement agreement stipulates that each class member who complies by the claims process would be $0.00351 per kilowatt hour for electric supply service received from NAPG while on a variable rate plan and $.0195 per therm for natural gas supply service received from NAPG while on a variable rate plan. Settlement Agreement. ¶ 5.1(a)-(b). Any class member who submits a claim less than $2.00 will be entitled to a $2.00 benefit. *Id.* ¶ 5.1(c). NAPG, however, would only face a $16,053,000 cap, and, if the value exceeds $16,053,000, the claims will be adjusted on a *pro rata* basis. *Id.* ¶ 5.1. Class members would have to sign a claims form attesting to various relevant pieces of information. *Id.*

Additionally, class counsel will be awarded a fee of not more than $3,669,000 in attorneys' fees after submitting an application to the Court. *Id.* ¶ 7.1. Named Plaintiffs would receive additional fees up to $5,000 for each class representative. *Id.* ¶ 7.5.

In return, Plaintiffs "for good and sufficient consideration, the receipt and adequacy of which is acknowledged, shall be deemed to, and shall, in fact, have remised, released and forever discharged any and all Released Claims, which they, or any of them, had or has or may in the future have or claim to have against any of the Released Persons." *Id.* § 12.

First, the agreement appears to meet the substantive requirement for preliminary certification. *See* 4 Newberg on Class Actions § 13:15 (noting courts generally consider the percentage of the class's potential recovery at trial represented in the agreement, the likelihood of prevailing, the complexity and costs of trial, and the capacity for the defendant to withstand a larger judgment at the final stage of approval, and that "[a]t the preliminary approval stage, courts focus on many of the same factors, though with somewhat less scrutiny.").

The parties argue that, absent settlement, the "resulting fact intensive trials will also result in significant expenses to all parties. Any judgment will likely be appealed, extending the costs and duration of the litigation." Pl. Mem. at 13. Additionally, the parties argue that "there is a broad range of potential recovery if the case were to be litigated to judgment after trial" but that "[t]here is no guarantee that the jury would accept any, much less all, of [Plaintiff's expert's] analysis. Moreover, Defendant could prevail on its legal arguments to defeat liability entirely, resulting in no recovery for class members." *Id.* at 14.

The Court recognizes these arguments. Additionally, this case has been pending for a long time, and been subject to extensive discovery, increasing the likelihood that settlement agreement represents a realistic appraisal of each party's position. And — as the parties have repeatedly noted — "there is no certainty" that NAPG could bear a greater damages award. *Id.* at 18.

Second, the settlement meets the procedural requirements for preliminary approval. *See, e.g.*, 4 Newberg on Class Actions § 13:14 ("The primary procedural factor courts consider in determining whether to preliminarily approve a proposed settlement is whether the agreement arose out of arms-length, noncollusive negotiations"); *see also Menkes*, 270 F.R.D. at 101 (approving settlement where "where it is the result of serious, informed, and non-collusive

negotiations."). The parties engaged in extensive settlement discussions in this matter and its companion cases beginning in 2015. Pls. Mem. at 7. This included multiple mediation attempts and private settlement attempts. *Id.* Furthermore, the Court is not aware of any evidence or indicia suggesting that the negotiations were collusive.

Taking all these considerations into account, the Court finds that the Settlement Agreement is within the range of approvable settlements and there is "probable cause" to submit the agreement to the class. Preliminary approval is granted.

## C.     Notice to Potential Class Members

The parties agree that, "in general terms," Class Notice shall provide a short statement of the lawsuits at issue, an "appropriate means for obtaining additional information" about the Settlement, information about opting-out of the Settlement, and "any relief to Settlement Class Members is contingent on the Court's final approval of the Settlement." Settlement Agreement § VIII. The parties also attach both a short form notice they propose to distribute through the mail, and long form notice that will be available on the Internet.[3]

In the Second Circuit, "a settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *WalMart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) (quotation marks omitted).

The two forms of class notice provide adequate notice as required by the Settlement Agreement, due process, and Federal Rule of Civil Procedure 23(e). The Court finds that the Parties' proposal regarding class notice to potential class members constitutes the best notice

---

[3] The notice proposals were submitted alongside the Settlement Agreement. Notice, Settlement Agreement, Ex. B, ECF No. 116-1; Notice, Settlement Agreement, Ex. C, ECF No. 116-1.

practicable under the circumstances, and complies fully with the notice requirements of due process and Fed. R. Civ. P. 23.

Additionally, the Court approves the following schedule for dissemination of the Class Notice, requesting exclusion from the Settlement Class, or objecting to the Settlement, submitting papers in connection with Final Approval, and the Final Approval Hearing:

| | |
|---|---|
| Within 21 days after entry of Order Preliminarily Approving the Settlement | Defendant shall provide names and addresses of Settlement Class Members to the Settlement Administrator. |
| Within 30 days after entry of Order Preliminarily Approving the Settlement | The Settlement Administrator shall mail the Short Form Notice to all Settlement Class Members. |
| Within 30 days after entry of Order Preliminarily Approving the Settlement | The Settlement Administrator shall cause the Settlement Agreement, this Order, and a copy of the Long Form Notice to be posted on the website created pursuant to the Settlement Agreement, as set forth in the Short Form Notice |
| Upon mailing of Class Notice | Class Period begins. |
| 45 days after mailing of Class Notice | Plaintiffs shall file a motion for final approval of settlement, and an application for the award of attorneys' fees, costs, and enhancement awards for named plaintiffs. The Settlement Administrator shall cause any such motions to be posted on the Settlement website |
| 60 days after mailing of Class Notice | Deadline for Settlement Class Members to submit Valid Claims.<br><br>Opt-Out Date: Deadline for Settlement Class Members to opt-out of Settlement.<br><br>Objection Date: Deadline for Settlement Class Members to object to terms of Settlement and to advise the parties and the Court of intent to appear at Final Approval Hearing. |
| 67 days after mailing of Class Notice | Deadline for the Settlement Administrator to provide counsel with affidavit of mailing of Short Form Notice. |
| 67 days after mailing of Class Notice | Deadline for the Settlement Administrator to provide counsel a list of all Class members who returned a timely request to opt-out of the Settlement (as described in the Class Notice). |
| At least 21 days prior to Final Approval Hearing Class Notice | Class Counsel shall serve and file an affidavit of the Settlement Administrator declaring compliance with the notice provisions of this Order and CAFA notice requirements. |

| At least 7 days prior to the Final Approval Hearing | Plaintiff shall file responses to any objections. |
| 90 days after Defendant serves notice required under 28 U.S.C. § 1715(b) | Earliest date for entry of order finally approving Settlement Agreement. |

## D.    Claims Administration and Opt-Out Procedure

The Court approves Heffler Claims Group as the Settlement Administrator, with the responsibilities set forth in the Settlement Agreement.

Any Settlement Class Member may request to be excluded (or "opt-out") from the Class. A Settlement Class Member who wishes to opt-out of the Class must give written notice to the Settlement Administrator, Class Counsel, and counsel for NAPG by the Opt-Out Deadline. Opt-Out requests must: (i) be signed by the Class Member who is requesting exclusion; (ii) include the full name, address, and phone number(s) of the Class Member requesting exclusion; and (iii) include the following statement: "I/We request to Opt-Out from the settlement in the NAPG Action." Requests for Exclusion that are not timely will be considered invalid and, of no effect, and the Person who untimely submits a Request for Exclusion will remain a Settlement Class Member and will be bound by any Orders entered by the Court, including the Final Approval Order and the Releases contemplated thereby. Except for those Persons who have properly and timely submitted Requests for Exclusion, all Settlement Class Members will be bound by the Settlement Agreement and the Final Approval Order, including the Releases, regardless of whether they file a Claim or receive any monetary relief. Any Person who timely and properly submits a Request for Exclusion shall not: (a) be bound by any orders or the Final Approval Order nor by the Releases contained therein; (b) be entitled to any relief under the Settlement Agreement; (c) gain any rights by virtue of the Settlement Agreement; or (d) be entitled to object to any aspect of the Settlement Agreement. Each Person requesting exclusion from the Class must personally sign his or her own individual Request for Exclusion. No Person may opt-out of

the Class for any other Person, or be opted-out by any other Person, and no Person shall be deemed opted-out of the Class through any purported "mass" or "class" opt-outs.

Any Settlement Class Member who intends to object to the Settlement must do so by the Objection Deadline. In order to object, the Settlement Class Member must file with the Court prior to the Objection Deadline, and provide a copy to Class Counsel and Defendant's Counsel, also prior to the Objection Deadline, a document that includes all of the following:

a. attaches documents establishing, or provide information sufficient to allow the Parties to confirm that the objector is a Class Member;

b. includes a statement of such Class Member's specific Objection;

c. state the grounds for the Objection;

d. identify any documents such objector desires the Court to consider;

e. provide all information requested on the Claim Form; and,

f. provide a list of all other Objections submitted by the objector, or the objector's counsel, to any class action settlements submitted in any Court in the United States in the previous five years (if the Settlement Class Member or his/her or its counsel has not objected to any other class action settlement in the United States in the previous five years, he/she or it shall affirmatively so state in the Objection).

Any Settlement Class Member who fails to file and serve timely: (a) a written objection containing all of the information listed in items (a) through (f) of the previous paragraph; and, (b) notice of his/her intent to appear at the Final Approval Hearing, as detailed in this paragraph, shall not be permitted to object to the Settlement and shall be foreclosed from seeking any

review of the Settlement or the terms of the Settlement Agreement by any means, including but not limited to an appeal.

Upon the filing of an objection, Class Counsel and Defendant's Counsel may take the deposition of the objecting Settlement Class Member under the Federal Rules of Civil Procedure at an agreed-upon time and location, and to obtain any evidence relevant to the objection. Failure by an objector to make himself of herself available for deposition or comply with expedited discovery may result in the Court striking the objection. The Court may tax the costs of any such discovery to the objector or the objector's counsel, if the Court determines that the objection is frivolous or is made for an improper purpose.

**E. Procedures for Final Approval of the Settlement**

**1.      Fairness Hearing**

The Court will hold a Final Approval Hearing (also known as a "Fairness Hearing") on on **August 1, 2018, at 10 a.m.**, to consider the fairness, reasonableness and adequacy of the Settlement Agreement, the entry of a Final Order and Judgment in the case, any petition for attorneys' fees, costs and reimbursement of expenses made by Class Counsel, Service Awards to named Plaintiffs, and any other related matters that are brought to the attention of the Court in a timely fashion.

Any member of the Class that has not filed a Request for Exclusion may appear at the Fairness Hearing in person or by counsel and may be heard, to the extent allowed by the Court, either in support of or in opposition to the fairness, reasonableness, and adequacy of the Settlement Agreement; provided, however, that no person shall be heard in opposition to the Settlement Agreement, and no papers or briefs submitted by or on behalf of any such person shall be accepted or considered by the Court, unless, in accordance with the deadlines above,

such person: (a) filed with the Clerk of the Court a notice of such person's intention to appear as well as a statement that indicates the basis for such person's opposition to the Settlement Agreement, and any documentation in support of such opposition; and (b) serves copies of such notice, statement and documentation upon all counsel.

The date and time of the Fairness Hearing shall be set forth in the Notice but shall be subject to adjournment by the Court without further notice to the members of the Class other than which may be posted on the Court's Electronic Case Filing (ECF) system or the website created under the Settlement Agreement, as set forth in the Short Form Notice.

If Final Approval of the Settlement is not granted, or if the Settlement is terminated for any reason, the Settlement and all proceedings had in connection therewith shall be without prejudice to the parties' rights and the parties shall return to the status quo ante, and all Orders issued under the Settlement and Preliminary and Final Approval process shall be vacated. If this happens, the Settlement Agreement and all negotiations concerning it shall not be used or referred to in this action for any purpose whatsoever.

Finally, the Court hereby stays all proceedings in this Court other than those proceedings necessary to carry out or enforce the terms and conditions of the Settlement, until the Effective Date of the Settlement has occurred. Additionally, the Court hereby prohibits and/or enjoins any other person or counsel from representing or prosecuting any claims on behalf of this Class in any other Court.

## CONCLUSION

For the reasons stated above, the motion for preliminary settlement approval is

**GRANTED**.

    **SO ORDERED** this 30th day of March, 2018, in Bridgeport, Connecticut.

                    /s/ Victor A. Bolden
                    VICTOR A. BOLDEN
                    UNITED STATES DISTRICT JUDGE