# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| PAUL T. EDWARDS, GERRY WENDROVSKY, SANDRA DESROSIERS and LINDA SOFFRON, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NORTH AMERICAN POWER & GAS, LLC,<br><br>Defendant. | Case No: 3:14-cv-1714 (VAB) |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND APPROVAL OF AWARD OF ATTORNEYS' FEES AND EXPENSES AND PLAINTIFF SERVICE AWARDS

## Contents

INTRODUCTION..................................................................................................1

BACKGROUND ..................................................................................................5

I.     THE LITIGATION ......................................................................................5

II.    THE SETTLEMENT TERMS.....................................................................11

ARGUMENT .....................................................................................................12

III.   THE SETTLEMENT SHOULD BE APPROVED........................................12

     A.    Settlements of Class Action Litigations are Favored...........................12

     B.    The Settlement is Procedurally Fair...................................................13

     C.    The Settlement is Substantively Fair, Reasonable and Adequate.........15

          1.    The Stage of the Proceedings and the Amount of Discovery Completed.......15

          2.    The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and the Attendant Risks of Litigation. ..................16

          3.    The Reaction of the Class Was Overwhelmingly Positive. ...........................19

          4.    The Risks of Establishing Liability and Damages. ........................................20

          5.    The Risk of Recovery. ...................................................................................21

          6.    The Actions Are Complex and Will Be Expensive and Lengthy. ..................22

          7.    Maintaining the Class Action Through Trial May Be Challenging................22

     D.    Notice Was Provided in the Best Practicable Manner ..........................23

IV.   THE COURT SHOULD CERTIFY THE CLASS. ..........................................24

V.    THE COUIRT SHOULD APPROVE THE REQUESTED AWARD OF ATTORNEYS' FEES AND EXPENSES TO BE PAID BY DEFENANTS TO CLASS COUNSEL.......24

     A.    Class Counsel Is Entitled to Compensation.........................................24

     B.    The Second Circuit Has Approved Both the Percentage Method And The Lodestar Method, But The Percentage Method Is Preferred.  ...............25

C.    The Requested Fee Is Justified Under the Percentage Method..............................26

    1.    The Full Value of The Settlement Fund Available Is Considered............26

    2.    The Fee Award Is Supported by the Goldberger Factors .........................28

        a.    Counsel's Time and Labor ..................................................29

        b.    The Relationship of the Requested Fee to the Settlement ............30

        c.    The Risk Of Litigation ...................................................31

        d.    The Magnitude and Complexity Of the Litigation .......................32

        e.    The Quality Of Representation ......................................33

        f.    Public Policy Considerations .........................................34

        g.    Reaction of the Class ...................................................35

D.    The Fee Is Justified Under the Lodestar/Multiplier Method ................................35

E.    The Fee Request Includes Class Counsel's Reasonable and Necessary
Expenses ........................................................................36

F.    The Court Should Approve the Requested Service Awards .................................37

**CONCLUSION** ...............................................................39

## **TABLE OF AUTHORITIES**

**Cases**

*Adams v. Rose,*
    No. 03 Civ. 7011, 2003 WL 21982207 (2d Cir. Aug. 20, 2003) ............................................... 31

*Aros v. United Rentals, Inc.,*
    No. 10 Civ. 73, 2012 WL 3060470 (D. Conn. July 26, 2012) .................................................. 27

*Beckman v. KeyBank, N.A.,*
    No. 12 Civ. 7836 (RLE), 2013 WL 1803736 (S.D.N.Y. Apr. 29, 2013) .................................. 30

*Blessing v. Sirius XM Radio Inc.,*
    No. 11 Civ. 3696, 2012 WL 6684572 (2d Cir. 2012) ............................................................. 15

*Boeing Co. v. Van Gemert,*
    444 U.S. 472 (1980) ...................................................................................................... 25, 26, 27

*Bozak v. FedEx Ground Package Sys., Inc.,*
    No. 11-cv-00738, 2014 WL 3778211 (D. Conn. July 31, 2014) ....................................... 27, 30

*Caitflo LLC v. Sprint Communications Co., LP,*
    No. 11-cv-00497, 2013 WL 3243114 (D. Conn. June 26, 2013) ............................................ 27

*Capsolas v. Pasta Resources Inc.,*
    No. 10 Civ. 5595, 2012 WL 4760910 (S.D.N.Y. Oct. 5, 2012) ............................................. 30

*Charron v. Pinnacle Grp. N.Y. LLC,*
    874 F. Supp. 2d 179 (S.D.N.Y. 2012) .................................................................................... 20

*City of Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974) ................................................................................... 15, 20, 31

*Cohen v. Chilcott,*
    522 F. Supp. 2d 105 (D.D.C. 2007) ........................................................................................ 28

*Dahingo v. Royal Caribbean Cruises, Ltd.,*
    312 F. Supp. 2d 440 (S.D.N.Y. 2004) .................................................................................... 27

*D'Amato v. Deutsche Bank,*
    236 F.3d 78 (2d Cir. 2001) ............................................................................................. 14, 16

*deMunecas v. Bold Food, LLC,*
    No. 09 Civ. 440 (DAB), 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) ................................. 30

*Dornberger v. Metropolitan Life Ins. Co.*,
   203 F.R.D. 118 (S.D.N.Y. 2001) ................................................ 37

*Elliot v. Leatherstocking Corp.*,
   No. 10 Civ. 0934 (MAD) (DEP), 2012 WL 6024572 (N.D.N.Y. Dec. 4, 2012) ..................... 37

*Fleisher v. Phoenix Life Ins. Co.*,
   No. 11-cv-8405 (CM), 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) ............................ 17, 27

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005) ................................................ 22

*Gilliam v. Addicts Rehab. Ctr. Fund*,
   No. 05 Civ. 3452 (RLE), 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ................................ 31

*Goldberger v. Integrated Resources, Inc.*,
   209 F.3d 43 (2d Cir. 2000) ................................................ 24, 28, 29, 35

*Hall v. ProSource Technologies, LLC*,
   No. 14 Civ. 2502 (SIL), 2016 WL 1555128 (E.D.N.Y. Apr. 11, 2016) ................................ 37

*Hart v. RCI Hospitality Holdings, Inc.*,
   No. 09 Civ. 3043, 2015 WL 5577713 (S.D.N.Y. Sept. 22, 2015) ............................................ 27

*Hayes v. Harmony Gold Mining Co.* 509 F. App'x 21 (2d Cir. 2013) ........................................ 30

*Hayes v. Harmony Gold Mining Co.*,
   No. 08 Civ. 03653 (BSJ), 2011 WL 6019219 (S.D.N.Y. Dec. 2, 2011),
   *aff'd* 509 F. App'x 21 (2d Cir. 2013) ................................................ 30

*Hernandez v. Merrill Lynch & Co., Inc.*,
   No. 11 Civ. 8472, 2013 WL 1209563 (S.D.N.Y. Mar. 21, 2013) ...................................... 30, 38

*Hicks v. Stanley*,
   No. 01 Civ. 10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ...................................... 14, 34

*Hubbard v. Donahoe*,
   No. 03 Civ. 1062 (RJL), 2013 WL 3943495 (D.D.C. July 31, 2013) ...................................... 28

*In re "Agent Orange" Prod. Liab. Litig.*,
   597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. Apr. 1987) ......................... 16

*In re Abrams & Abrams, P.A.*,
   605 F.3d 238 (4th Cir. 2010) ................................................ 34

*In re American Bank Note Holographics, Inc. Sec. Litig.*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001) .................................................................. 19

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000) ...................................................... 16, 20, 22

*In re Brown Co. Sec. Litig.*,
    355 F. Supp. 574 (S.D.N.Y. 1973) ....................................................................... 33

*In re Checking Account Overdraft Litig.*,
    830 F. Supp. 2d 1330 (S.D. Fla. 2011) ............................................................... 17

*In re China Sunergy*,
    No. 07 Civ. 7895 (DAB), 2011 WL 1899715 (S.D.N.Y. May 13, 2011)............................... 36

*In re Fab Universal Corp. Shareholder Derivative Litig.*,
    No. 14 Civ. 687 (RWS), 2015 WL 7299773 (S.D.N.Y. Nov. 17, 2015) ............................... 14, 15

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    No. 02 Civ. 3400 (CM) (PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) .................. 34, 36

*In re Global Crossing Securities and ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................................... 19

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
    851 F. Supp. 2d 1040 (S.D. Tex. 2012) ............................................................... 28

*In re Hi-Crush Partners L.P. Securities Litig.*,
    No. 12 Civ. 8557 (CM), 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014)............................ 22, 31

*In re HIKO ENERGY LLC, Energy Litigation*,
    No. 14 Civ. 1771 (VB) (S.D.N.Y. May 9, 2016)................................................ 13, 18, 20, 22

*In re Initial Public Offering Sec. Litig.*,
    671 F. Supp. 2d 467 (S.D.N.Y. 2009) .................................................................. 17

*In re Lloyd's Am. Tr. Fund Litig.*,
    No. 96 Civ. 1262 (RWS), 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002)............................ 31

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
    233 F.R.D. 306 (E.D.N.Y. 2006) .......................................................................... 13

*In re Marsh ERISA Litig.*,
    265 F.R.D. 128 (S.D.N.Y. 2010) .............................................................. 15, 30, 34

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
  No. 02 MDL 1484 (JFK), 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007)...................................... 36

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) ........................................................................................ 29

*In re Nigeria Charter Flights Litig.*,
  No. 04-cv-304, 2011 WL 7945548 (E.D.N.Y. Aug. 25, 2011) ................................................. 27

*In re PaineWebber Ltd. Partnerships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd* 117 F.3d 721 (2d Cir. 1997) ................................. 16, 20

*In re Polaroid*,
  No. 03 Civ. 8335 (WHP), 2007 WL 2116398 (S.D.N.Y. Jul. 19, 2007).......................... 25, 37

*In re Prudential Sec. Ltd. P'ships Litig.*,
  985 F. Supp. 410 (S.D.N.Y. 1997) ..................................................................................... 35

*In re Sony Corp. SXRD Rear Projection TV Mktg., Sales Practices and Products Liab. Litig.*,
  No. 09 MD 2102 (RPP), 2010 WL 3422722 (S.D.N.Y. Aug. 24, 2010)........................... 36, 37

*In re Sumitomo Copper Litig.*,
  74 F. Supp. 2d 393 (S.D.N.Y. 1999) ................................................................................. 25

*In re Telik, Inc. Sec. Leg.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008) ...................................................................... 25, 30, 31

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
  724 F. Supp. 160 (S.D.N.Y. 1989) ..................................................................................... 29

*In re Veeco Instruments*,
  No. 05 MD 01695 (CM) (GAY) 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ........... 25, 31, 36

*In re Vitamins Antitrust Litig.*,
  No. 99 Civ. 197 (TFH), 2001 WL 34312839 (D.D.C. July 16, 2001)...................................... 28

*In re Warner Chilcott Ltd. Sec. Litig.*,
  No. 06 Civ. 11515 (WHP), 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008)............................. 13

*In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*,
  364 F. Supp. 2d 980 (D. Minn. 2005)................................................................................... 35

*Ingles v. Toro*,
  438 F. Supp. 2d 203 (S.D.N.Y. 2006) ................................................................................. 15

*Johnston v. Comerica Mortgage Corp.*,
  83 F.3d 241, 246 (8th Cir. 1996) ....................................................................... 28

*Karic v. Major Automotive Companies, Inc.*,
  No. 09 Civ. 5708 (CLP), 2016 WL 1745037 (E.D.N.Y. Apr. 27, 2016).......................... 37, 38

*Kemp-DeLisser v. St. Francis Hospital and Medical Center Fin. Committee*,
  No. 15-cv-1113 (VAB), 2016 WL 6542707 (D. Conn. Nov. 3, 2016)....... 14, 15, 19, 25, 29, 30

*Kiefer v. Moran Foods, LLC*,
  No. 12-cv-756, 2014 WL 3882504 (D. Conn. Aug. 5, 2014)................................... 26

*Lopez v. Youngblood*,
  No. 07 Civ. 0474 (DLB), 2011 WL 10483569 (E.D. Cal. Sept. 2, 2011) ............................ 28

*Malchman v. Davis*,
  761 F.2d 893 (2d Cir. 1985) ....................................................................... 15

*Maley v. Del Glob. Tech. Corp*,
  186 F. Supp. 2d 358 (S.D.N.Y) ....................................................... 19, 20, 34

*Masters v. Wilhelmina Model Agency, Inc.*,
  473 F.3d 423 (2d Cir. 2007) ....................................................................... 26, 27

*McReynolds v. Richards-Cantave*,
  588 F.3d 790 (2d Cir. 2009) ....................................................................... 13

*Missouri v. Jenkins*,
  491 U.S. 274 (1989)....................................................................... 29

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
  No. 06 Civ. 4270 (PAC), 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ............................ 30, 31

*Puglisi v. TD Bank, N.A.*,
  2015 WL 4608655 (E.D.N.Y. July 30, 2015)....................................................... 38

*Raniere v. Citigroup Inc.*,
  310 F.R.D. 211 (S.D.N.Y. 2015) ....................................................................... 14

*Richards v. Direct Energy*,
  3:14-CV-01724 (VAB) ....................................................................... 21

*Schulte v. Fifth Third Bank*,
  805 F. Supp. 2d 560 (N.D. Ill. 2011) ....................................................... 17

*Sheffler v. Commonwealth Edison Company*,
  955 N.E.2d 1110 (Ill. 2011) ......................................................................... 7

*Siler v. Landry's Seafood House–North Carolina, Inc.*,
  No. 13 Civ. 587, 2014 WL 2945796 (S.D.N.Y. June 30, 2014) .............................. 20

*Silverstein v. AllianceBernstein, L.P.*,
  No. 09 Civ. 05904 (LGS), 2013 WL 7122612 (S.D.N.Y. Dec. 20, 2013) ............................. 19

*Spicer v. Pier Sixty LLC*, No. 08 Civ. 10240 (LBS), 2012 WL 4364503 (S.D.N.Y. Sept. 14,
  2012) ............................................................................................... 30

*Steiner v. Williams*, No. 99 Civ. 10186 (JSM),
  2001 WL 604035 (S.D.N.Y. May 31, 2001) ........................................................ 25

*Strougo v. Bassini*,
  258 F. Supp. 2d 254 (S.D.N.Y. 2003) ............................................................. 13

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
  No. 01 Civ. 11814 (MP), 2004 WL 1087261 (S.D.N.Y. May 14, 2004) ................................ 16

*Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316 (PAC), 2010 WL 5507892 (S.D.N.Y.
  Dec. 21, 2010), *aff'd* 519 F. App'x 1 (2d Cir. 2013) ......................................... 23, 28

*Trustees v. Greenough*,
  105 U.S. 527 (1881) ............................................................................... 25

*Velez v. Novartis Pharm. Corp.*,
  No. 04 Civ. 09194 (GEL), 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) .............................. 27

*Viafara v. MCIZ Corp.*,
  No. 12 Civ. 7452 (RLE), 2014 WL 1777438 (S.D.N.Y. May 1, 2014) ................................. 37

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) ..................................................................... 25, 30

*Weinberger v. Kendrick*,
  698 F.2d 61 (2d Cir. 1982) ....................................................................... 12

*Williams v. First National Bank*,
  216 U.S. 582 (1910) ............................................................................... 12

*Willix v. Healthfirst, Inc.*,
  No. 07 Civ. 1143 (ENV) (RER), 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) ........................ 23, 30

*Wise v. Energy Plus Holdings, LLC*,
  No. 11-7345 (S.D.N.Y.) ........................................................................................ 17

*Zeltser v. Merrill Lynch & Co., Inc.*,
  No. 13 Civ. 1531 (FM), 2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014) ................................. 30

**Rules**

Fed. R. Civ. P. 23(c)(2)(B). ...................................................................................... 23

Fed. R. Civ. P. 23(c)(3). .......................................................................................... 23

Fed. R. Civ. P. 23(e)(2) ........................................................................................... 13

**Treatises**

4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11.45 (4th ed. 2002) ............... 16

4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 14.6 (4th ed. 2002) ............ 27

Manual for Complex Litigation, Fourth, § 21.71 ........................................................... 28

Plaintiffs Paul Edwards, Gerry Wendrovsky, Sandra Desrosiers, Linda Soffron, John

Arcaro, Michael Tully, David Fritz, and Peggy Zahn (collectively, "Plaintiffs"), individually and

on behalf of the Settlement Class (as defined in the Settlement Agreement, previously submitted

at ECF No. 116-1), respectfully submit this memorandum of law in support of their Motion for

Final Approval of the Class Action Settlement, Certification of Settlement Class, and Approval

of Award of Attorneys' Fees and Expenses and Plaintiff Service Awards (the "Motion").  In

conjunction herewith, Plaintiffs also respectfully submit the Declarations of Class Counsel

Robert A. Izard ("Izard Decl."), D. Greg Blankinship ("Blankinship Decl."), Richard Gordon

("Gordon Decl."), Matthew R. Mendelsohn ("Mendelsohn Decl."), and Matthew D. Schelkopf

("Shelkopf Decl."), as well as the Declaration of Joseph F. Mahan of the Heffler Claims Group,

the Settlement Administrator appointed by the Court in this case. ("Mahan Decl.").

## INTRODUCTION

The proposed Settlement resolves five class actions (collectively, the "Actions") pending

against Defendant North American Power & Gas, LLC ("NAPG").[1]  After hard-fought litigation,

which included extensive motion practice and investigation, and after exhaustive settlement

---

[1] The class actions are (1) *Edwards v. NAPG,* No. 3:14-cv-01714 (D. Conn.) and (2) *Arcaro v. North American Power & Gas, LLC*, No. 3:16-cv-01921 (D. Conn.) (collectively "*Edwards* Actions"); (3) *Fritz v. N. Am. Power & Gas, LLC*, No. 3:14-cv-634 (D. Conn.), (4) *Tully v. N. Am. Power & Gas, LLC*, No. 3:15-cv-469 (D. Conn.),4), and (5) *Zahn v. N. Am. Power & Gas, LLC*, No. 1:14-cv-8370 (N.D. IL) (collectively "*Fritz* Actions").  Although only *Edwards* presently is formally before this Court, all parties and counsel join in this motion for final approval, and the plaintiffs and counsel in the non-*Edwards* actions are prepared to move to formally transfer their respective actions to this Court should the Court so direct.  These five cases advance claims on behalf of consumers in Connecticut, Illinois, Maryland, Maine, New Hampshire, New Jersey, Ohio, Pennsylvania, Rhode Island, Georgia and Texas.  A sixth related class action against NAPG pending in the Southern District of New York (*Claride, et al. v. N. Am. Power & Gas, LLC*, No. 15-cv-1261 (S.D.N.Y.)) on behalf of New York consumers has also been settled on identical terms as the five cases before this Court (with corresponding overall liability caps in each Settlement based upon total energy usage by each of the respective classes).

negotiations that took place over more than two years (with the assistance of three highly regarded JAMS mediators), Plaintiffs and Defendant have agreed to a global settlement that will resolve all of the Actions.

Plaintiffs allege that NAPG lured Class Members into switching from their energy provider to NAPG for electricity and/or gas services by promising that, after the teaser rate expires, customers would enjoy a "market based variable rate" that reflects price changes in the market or wholesale market.  Some customer agreements also include a list of specific costs, such as transportation, administrative and storage costs.  Plaintiffs further allege that NAPG's representations were false and resulted in Class Members being charged more than they would have if NAPG abided by its promises or if Class Members had purchased electricity or natural gas from their local utility.   Defendant denies these allegations and contends that its rates were adequately disclosed and reasonably related to the relevant markets for electric and gas service. Defendant also contends that it has strong defenses and meritorious summary judgment arguments.

Discovery and motion practice were extensive in the Actions.  This included four motions to dismiss, the production and review of hundreds of thousands of documents and extensive electronic databases, 17 fact and expert depositions, expert reports, three class certification motions, summary judgment pre-motion submissions and briefing, and significant appellate practice before the Seventh Circuit and the Illinois Supreme Court.

Following arm's length negotiations by the Parties over a period of years, including multiple mediations and countless additional negotiations, the Parties entered into the Settlement Agreement which resolves all of the claims asserted in all of the Actions (as well as any claims that any NAPG customers in other states might have) and confers substantial benefits on the Class of "all Persons

2

who were NAPG Variable Rate Customers during the Class Period [February 20, 2012 through and including June 5, 2017] in Connecticut, Illinois, Maryland, Maine, New Hampshire, New Jersey, Ohio, Pennsylvania, Rhode Island, Georgia or Texas" (the "Settlement Class").[2]

Plaintiffs respectfully request that this Court now grant final approval in substantially the form set forth in the [Proposed] Order attached as Exhibit E to the Settlement Agreement (ECF No. 116-1).[3] *First*, the Settlement offers substantial benefits to Class Members and avoids the delay, expense, and risks inherent in litigating class claims through trial and appeal. Under the Settlement, each Class Member is entitled to receive $0.00351 per kilowatt hour for electric supply service and $0.0195 per therm for natural gas supply service received from NAPG while on a variable rate plan during the Class Period. Settlement Agreement (ECF No. 116-1) at ¶ 5.1. This represents over 23 cents on the dollar under Plaintiffs' reasonable "best case" damages model. Moreover, *every* Class Member is entitled to a minimum payment of $2.[4] As of June 8,

---

[2] Settlement Agreement, ¶¶ 2.11, 2.13. "Excluded from the Settlement Class are: North American Power & Gas, LLC; any of its parents, subsidiaries, or affiliates; any entity controlled by either of them; any officer, director, employee, legal representative, predecessor, successor, or assignee of North American Power & Gas, LLC; any person enrolled in a NAPG affinity program; and any person who has previously released claims that will be released by this Settlement; federal, state, and local governments (including all agencies and subdivisions thereof, but excluding employees thereof) and the judges to whom the Actions are assigned and any members of their immediate families." *Id.* at ¶ 2.13.

[3] To date, there are only 12 requests for exclusion and no objections. However, as the claims, objection and opt-out periods do not end until June 26, 2018, Class Counsel cannot yet prepare a final version of the [Proposed] Order. Class Counsel will file a pdf or their final [Proposed] Order (and will submit a Word version to chambers if so directed by the Court) when they update the Court as to the final opt-out and objection (if any) tallies.

[4] As discussed below (at note 8), the total benefit amount payable by NAPG (exclusive of attorneys' fees and expenses and lead plaintiff awards) is subject to a $16,053,000 cap (the "Cap").

2018, nearly 18,000 Class Members had filed claims to share in the available benefits.[5]  Mahan Decl. at ¶ 11.

**Second**, the Settlement was the product of arm's length negotiations aided by ***three*** experienced, independent mediators and conducted by experienced counsel who obtained extensive formal and informal discovery and were well-positioned to evaluate the strengths and weaknesses of the claims and defenses, potential damages, and the fairness of the Settlement.

**Third**, the positive response from the Class augurs in favor of approving the Settlement. As of June 8, 2018, only 12 of the approximately 490,000 Class Members had opted out, and there have been no objections to the Settlement.  Mahan Decl. at ¶ 14.  Although the objection and opt-out deadline is not until June 26, 2018, this current response demonstrates the Class' satisfaction with the Settlement.

Class Counsel also moves for an award of $3,154,805.12 in attorneys' fees and $474,194.88 in expenses.  The requested fee is less than 16% of the $19,722,000 total cash value available under the Settlement,[6] and constitutes only a 0.79 multiple (*i.e.,* a ***negative*** multiple) of counsels' lodestar.  As the amount requested falls well within the range of attorneys' fees and expenses awarded by courts within this Circuit using either the percentage of the fund or lodestar methodology and was adequately disclosed in advance to the Class through various notices, this Court should approve the requested attorneys' fees and expenses to compensate Class Counsel for the outstanding result achieved.

---

[5] Moreover, several weeks remain until the June 26, 2018 deadline for filing claims.

[6]  When, as here, the attorneys' fee and expense and lead plaintiff award requests are ***in addition*** to the cash available to the class, they are properly included in the overall benefit conveyed to the class (*see* Part III.C.1 below).

Class Counsel also requests that the Court approve the payment of Plaintiff Service Awards in the amount of $5,000.00 to each of the eight named Plaintiffs to compensate them for their time and effort spent in assisting in the prosecution of the Actions on behalf of the Class. NAPG has agreed to pay the requested service awards the Court approves up to this requested amount. The Service Award request is comparable to other service award payments in other class actions and was adequately disclosed in advance to the Class. Many of the Plaintiffs were deposed and/or produced documents, and all exposed themselves to public scrutiny by choosing to bring this public lawsuit for the benefit of their fellow consumers, and should receive an award for these efforts.

## BACKGROUND

### I.     THE LITIGATION

Before bringing the instant action, Class Counsel exhaustively investigated the Class' claims by communicating with Plaintiffs; reviewing their files; reviewing relevant contracts and marketing materials; researching the energy industry and markets; analyzing causes of action; and developing a litigation strategy. *See* Izard Decl. at ¶ 3; Blankinship Decl. at ¶ 3; Mendelsohn Decl. at ¶ 3; Schelkopf Decl. at ¶ 3.

Plaintiff Paul Edwards filed a class action complaint against NAPG on November 18, 2014, styled as *Edwards v. NAPG,* No. 3:14-cv-01714 (the "*Edwards* Action"), in the United States District Court for the District of Connecticut. On August 4, 2015, this Court denied NAPG's motion to dismiss as to all of the Mr. Edwards' substantive claims except unjust enrichment (which was dismissed without prejudice). The court also held that Mr. Edwards did not have standing to represent consumers from states other than his home state of Connecticut. Accordingly, Mr. Edwards filed an amended complaint, adding plaintiffs

Gerry Wendrovsky, Sandra Desrosiers, and Linda Soffron (the latter two of whom are residents of New Hampshire) on June 3, 2016, on behalf of Connecticut and New Hampshire consumers. The Parties then proceeded with discovery, including the production of hundreds of thousands of documents, service of expert reports, depositions of each of the named plaintiffs, and a 30(b)(6) corporate deposition of Defendant. The *Edwards* plaintiffs filed their motion for class certification on May 24, 2017 (ECF Nos. 82-87), which was fully briefed and awaiting oral argument at the time of settlement. NAPG also filed a motion for summary judgment on November 11, 2017 (ECF No. 105); filing of the *Edwards* plaintiffs' opposition has been stayed pending settlement. *See generally* Izard Dec. at ¶ 4.

*Fritz v. N. Am. Power & Gas, LLC*, No. 3:14-cv-00634 (D. Conn.) and *Tully v. N. Am. Power & Gas, LLC*, No. 3:15-cv-00469 (D. Conn.) have been consolidated before Judge Eginton in *Fritz* and assert causes of action on behalf of Rhode Island and New Jersey classes. *See* ECF Nos. 43, 58, 69. NAPG moved to dismiss both Plaintiffs' complaints, which motions were substantially denied. The Parties then proceeded with discovery, including the service of interrogatories, requests for admission, requests for production (that resulted in the production of hundreds of thousands of documents), discovery motions, party and fact depositions, and the service of expert reports. Plaintiffs have also filed motions for class certification, although the briefing has been stayed given the proposed settlement. *See Fritz*, No. 3:14-cv-00634 (D. Conn. Apr. 26, 2017), ECF Nos. 113, 114. *See generally* Blankinship Decl. at ¶¶ 4-5.

Plaintiff John Arcaro filed a class action complaint against NAPG on October 31, 2016 styled as *Arcaro v. North American Power & Gas, LLC*, No. 3:16-cv-01921-WWE (the "Arcaro Action"), in this Court on behalf of Rhode Island consumers. Insofar as the preexisting *Fritz* and *Tully* action, pending before Judge Eginton, already covered Rhode

6

Island consumers, Arcaro and NAPG agreed that the *Arcaro* action should be transferred to Judge Eginton.  Once before Judge Eginton, the Parties moved to stay *Arcaro* pending the outcome of the *Fritz* and *Tully* action, which the Court (Eginton, J.) granted.  Izard Decl. at ¶ 5.

      *Zahn v. N. Am. Power & Gas, LLC*, No. 1:14-cv-8370 (N.D. IL) is pending in the Northern District of Illinois and asserts causes of action on behalf of Illinois consumers.  NAPG moved to dismiss the Complaint, and on May 22, 2015, the Court granted the motion to dismiss on the basis that the Illinois Commerce Commission ("ICC") had exclusive jurisdiction over the dispute, and even if it did not, Plaintiff had not stated a cause of action.  Plaintiff appealed this decision to the Seventh Circuit.  After briefing and oral argument, on March 4, 2016, the Seventh Circuit certified the following question to the Illinois Supreme Court: Does the ICC have exclusive jurisdiction over a reparation claim, as defined by the Illinois Supreme Court in *Sheffler v. Commonwealth Edison Company*, 955 N.E.2d 1110 (Ill. 2011), brought by a residential consumer against an Alternative Retail Electric Supplier. On December 1, 2016, following briefing and oral argument, the Illinois Supreme Court answered the question: "Under Illinois law, the Illinois Commerce Commission does not have exclusive original jurisdiction over such claims.  The claims may be pursued through the courts."  NAPG then filed a Petition for Rehearing in the Illinois Supreme Court, which petition was denied on January 23, 2017.  On February 8, 2017, the Seventh Circuit reversed the District Court's decision that it lacked jurisdiction to hear the case, vacated its decision regarding the merits, and remanded for further proceedings.  The *Zahn* action is currently stayed pending approval of the Settlement.  *See Zahn*, No. 1:14-cv-8370 (N.D. IL July 12, 2017), ECF No. 72.  *See generally* Blankinship Decl. at ¶¶ 6-11.

As part of their investigations, and in preparation for their class certification motions and for a trial on the merits, Plaintiffs also engaged the services of Dr. Frank Felder, who is the Director of the Center for Energy, Economic & Environmental Policy at the Rutgers University Edward J. Bloustein School of Planning and Public Policy, and Seabron Adamson, a Vice President and electric-industry economist and specialist with the Energy practice at Charles River Associates. Felder and Adamson provided their expertise with respect to the manner in which NAPG determined its rates, and they assisted Plaintiffs in determining the extent to which NAPG's rates violated its contracts and in calculating potential damages. Izard Decl at ¶ 6; Blankinship Decl. at ¶ 12.

In mid-2015, the Parties in the *Fritz* Actions began to discuss the possibility of settlement. Blankinship Decl. at ¶ 13. On December 14, 2015, the Parties in the *Fritz* Actions participated in a mediation with Vivien B. Shelanski, Esq. of JAMS, but were unable to reach agreement on relief for the class. *Id.* On February 17, 2016, the Parties in the *Fritz* Actions engaged in another mediation with Ms. Shelanski, but again, remained far apart and were unable to reach a settlement. *Id.* Settlement discussions were then halted and the Parties continued extensive discovery and motion practice for the next eleven months. *Id.* After such discovery, and decisions by the Court in *Claridge* (*see* note 1 above) to grant class certification and the Illinois Supreme Court's ruling on the issue of jurisdiction, the Parties in the *Fritz* Actions agreed to reengage in settlement discussions. *Id.*

On January 27, 2017, the Parties in the *Fritz* Actions participated in a full-day mediation session with Peter H. Woodin, Esq. of JAMS. *Id.* at ¶ 14. While no settlement was reached at that time, progress was made and the Parties in the *Fritz* Actions agreed to continue discussions. *Id.* On February 23, 2017, the Parties in the *Fritz* Actions participated in another full-day mediation session with Mr. Woodin where additional progress was made, but additional issues remained. *Id.* Over the

following months, the Parties continued to discuss settlement both with the assistance of Mr. Woodin and independently.  *Id.*

On March 20, 2017, the Parties in the *Edwards* action likewise conducted a full-day mediation session with Mr. Woodin.  Izard Decl. at ¶ 7.  Although no settlement was reached, the Parties in *Edwards* continued to discuss settlement directly.  *Id.*

Ultimately, on June 27, 2017, the Parties in the *Fritz* Actions and in *Claridge* (*see* note 1 above) reached a settlement in principle with NAPG.  Blankinship Decl. at ¶ 14; Izard Decl. at ¶ 8.  The Parties in the *Fritz* Actions and *Claridge* filed a motion for preliminary approval of the Settlement on August 4, 2017 before Judge Castel (where the *Claridge* case was and is pending).  Blankinship Decl. at ¶ 15; Izard Decl. at ¶8.  Plaintiffs' counsel in the *Edwards* Actions opposed preliminary approval and wrote a letter seeking permission to move to intervene and raising certain concerns about the settlement.  Judge Castel thereafter denied the *Fritz* and *Claridge* plaintiffs' motion for preliminary approval. Blankinship Decl. at ¶ 15; Izard Decl. at ¶ 8.

Thereafter, the Parties in the Actions agreed to participate in mediation jointly.  On September 25, 2017, the Parties in the Actions participated in a full-day mediation session with Mr. Woodin.  The Parties could not reach a settlement during that session.  Nevertheless, the Parties agreed to participate in another full-day mediation session with Hon. Diane M. Welsh, U.S.M.J. (Ret.), which resulted in the Parties reaching a settlement in principle.  The formal Settlement Agreement was entered into on January 16, 2018. Blankinship Decl. at ¶ 16; Izard Decl. at ¶ 9.

The Parties recognize and acknowledge the benefits of settling these cases.  Plaintiffs believe that the claims asserted in this case have merit and that the evidence developed to date supports their claims.  Despite the strengths of their cases, Plaintiffs are mindful of the challenges to proof under,

and possible defenses to, the claims in these matters.  Plaintiffs further recognize and acknowledge the expense and length of time it would take to prosecute this matter against NAPG through trial, post-trial proceedings, and appeals, and that NAPG's ability to pay class judgments in all of the Actions is far from certain.  Class Counsel have taken into account the uncertain outcome and risks of the litigation, including the difficulties and delays inherent in such litigation, and the likelihood of protracted appeals.  Class Counsel have, therefore, determined that the Settlement set forth in this Agreement is fair, reasonable and adequate.  The Settlement confers substantial benefits upon, and is in the best interests of the Plaintiffs and the Settlement Class.

NAPG maintains that it has a number of meritorious defenses to the claims asserted in these actions.  Nevertheless, NAPG recognizes the risks and uncertainties inherent in litigation, the significant expense associated with defending class actions, the costs of any appeals, and the disruption to its business operations arising out of class action litigation.  NAPG also recognizes the risk that a trial on class-wide claims might present.  Accordingly, NAPG believes that the Settlement set forth in the Agreement is likewise in its best interests.

As a result of their fact and expert discovery efforts, both sides were able to enter into settlement negotiations with an informed view of the strengths and weaknesses of their prospective cases, and with a basis for determining what form of monetary relief would be reasonable and appropriate in the settlement context.

This Court granted preliminary approval of the Settlement on March 30, 2018 (ECF No. 126) (the "Preliminary Approval Order"), certifying the Class for settlement purposes and authorizing the dissemination of Class notice.[7]  Pursuant to the Preliminary Approval Order, the

---

[7]  Judge Castel granted preliminary approval in *Claridge* on March 16, 2018, and a final approval hearing is scheduled for June 26, 2018.  *See* Dkt. No. 139 in *Claridge.*

Parties worked with Heffler Claims Group ("Heffler") to provide the class with notice. Izard Decl. at ¶ 10; Mahan Decl. at ¶ 3.  In accord with the Notice Plan approved by the Court, the Settlement Class was provided with notice of the Settlement by postcard. Mahan Decl. at ¶ 10.  The postcard Notice included basic information about the Settlement and provided both a website address (www.ElectricityAndGasSettlement.com) where the full Notice can be reviewed and a toll-free telephone number that consumers could call with questions or to request paper copies of the relevant documents.  *Id.* at Ex. B.  The full and postcard Notices inform Class Members of all of the key details about the terms of the Settlement, including (i) the fact that Plaintiff would request an award of attorneys' fees and expenses of up to $3,669,000 and lead plaintiff service awards of $5,000 per Plaintiff, which amounts are separate from the benefits payable to Class Members; and (ii) the procedures for opting-out or objecting to the Settlement or motion for attorneys' fees, expenses and case contribution awards.  *Id.* at Exs. A, B.

## II.     THE SETTLEMENT TERMS

The gravamen of Plaintiffs' allegations is that NAPG's pricing for variable rate energy did not follow the pricing representations made in NAPG's contract.  Under the Settlement Agreement, Defendant shall pay Class Members who timely submit completed claim forms:

1. NAPG Variable Rate Customers shall receive $0.00351 per kilowatt hour for electric supply service and $0.0195 per therm for natural gas supply service received from NAPG while on a variable rate plan during the Class Period.  This averages to $2.87 per month of enrollment per Class Member, although actual individual awards will vary based upon actual usage.  However, should the total Benefit calculated for a NAPG Variable Rate

Customer who submits a Valid Claim be less than $2, that Customer shall be entitled to receive a $2 Benefit.[8]

2. In the event that the NAPG Variable Rate Customer has more than one Household, then the Class Member may file another Claim seeking a Benefit and receive another Individual Settlement Amount for that additional Household.

Settlement Agreement at ¶ 5.1. Defendant shall also separately pay the cost of notice to the class and administration of the settlement. *Id.*, Section X. Finally, Defendant has agreed to separately pay and not to oppose plaintiffs' attorney fees and costs, and a request for Representative Plaintiff enhancement awards of $5,000 each, in a total amount up to $3,669,000. *Id.* at ¶¶ 7.2, 7.5.

In return for making these settlement benefits available to all Settlement Class Members, the Settlement Class Members' claims against Defendant will be dismissed with prejudice and all Settlement Class Members (other than those who opt-out of the Settlement Class) will release and be permanently barred from pursuing any claims in accordance with the provisions of the Settlement Agreement. Settlement Agreement at Section XII.

## ARGUMENT

### III. THE SETTLEMENT SHOULD BE APPROVED

#### A. Settlements of Class Action Litigations are Favored

Strong judicial policy favors the settlement of class actions. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *Williams v. First National Bank*, 216 U.S. 582 (1910)). "Class

---

[8] The total Benefit amount payable by NAPG are subject to a $16,053,000 cap. (Combined with the concurrent proposed settlement for New York consumers in the *Claridge* litigation, NAPG's total liability cap is $17,500,000.) In the event that the value of the Benefits claimed exceeds the Cap, the Benefit payable to each NAPG Variable Rate Customer will be reduced pro rata based on the individual's electric supply and/or natural gas supply use while on a variable rate plan.

action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation.  There is a strong public interest in quieting any litigation; this is particularly true in class actions." *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006) ; *see also Strougo v. Bassini*, 258 F. Supp. 2d 254, 257 (S.D.N.Y. 2003); *In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515 (WHP), 2008 WL 5110904, at *1 (S.D.N.Y. Nov. 20, 2008).

Indeed, in a case much like this, Judge Briccetti approved a similar claims-made class settlement.  *See* Final Approval Order in *In re HIKO ENERGY LLC, Energy Litigation*, No. 14 Civ. 1771 (VB) ("*In re HIKO*") at Dkt. No. 93 (S.D.N.Y. May 9, 2016); *see also* Transcript of Final Approval Hearing, in *In re HIKO* dated May 9, 2016 (the "*HIKO* Trans.") (attached as Exhibit B to the Izard Decl.).  In *In re HIKO*, the plaintiffs alleged essentially identical claims against another electric supply company.  Judge Briccetti granted final approval, finding that the settlement was both procedurally and substantively fair.  *See HIKO* Trans. at 11:17-20:12.  Just as in *In re HIKO*, the Settlement here is fair, reasonable, and adequate, both procedurally and substantively, and warrants final approval by this Court.

Courts assess proposed class action settlements to determine whether they are "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  This involves two components: procedural fairness and substantive fairness.  This Settlement satisfies both criteria.

**B.    The Settlement is Procedurally Fair**

A class settlement is presumed to be fair, adequate, and reasonable where it is "reached in arm's-length negotiation between experienced, capable counsel after meaningful discovery." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803-04 (2d Cir. 2009); *see also HIKO* Trans. at 12:2-5 ("[A] presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after

13

meaningful discovery."); *Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 217 (S.D.N.Y. 2015).  In determining whether a settlement is procedurally fair, courts evaluate the "negotiating process, to ensure that the settlement resulted from arm's length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests." *Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001).  A settlement reached after mediation is presumed to be arms'-length.  *Hicks v. Stanley,* No. 01 Civ. 10071, 2005 WL 2757792, at *5 (S.D.N.Y. Oct. 24, 2005); *Kemp-DeLisser v. St. Francis Hospital and Medical Center Fin. Committee,* No. 15-cv-1113 (VAB), 2016 WL 6542707, at 10 (D. Conn. Nov. 3, 2016).

This Settlement, reached as a result of arm's length negotiation after protracted, hard-fought litigation and multiple mediation sessions before each of three separate mediators, meets the standard for procedural fairness.  "The parties are represented by experienced counsel, supporting a conclusion that the settlement negotiations were based on informed judgments as to the merits of the claims and defenses."  *In re Fab Universal Corp. Shareholder Derivative Litig.*, No. 14 Civ. 687 (RWS), 2015 WL 7299773, at *2 (S.D.N.Y. Nov. 17, 2015).  Plaintiffs' counsel in this case were well-positioned to make informed judgments about the strengths and weaknesses of Plaintiffs' claims due to the thorough discovery in the Actions, as well as their extensive experience and knowledge in the area of complex and class action litigation as demonstrated on their firm resumes. *See* Izard Decl. at Ex. A; Blankinship Decl. at Ex. 1; Mendelsohn Decl. at Ex. A; Schelkopf Decl. at Ex. A.  The fact that the Settlement Agreement (at ¶ 7.2) specifically provides that the

Settlement is not conditioned on approval of Class Counsel's attorney fee request is "further evidenc[e of] arm's-length negotiations." *Fab Universal Corp.,* 2015 WL 7299773, at *2.[9]

### C.     The Settlement is Substantively Fair, Reasonable and Adequate

The Second Circuit identified nine factors in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462–63 (2d Cir. 1974) that district courts should consider in evaluating a proposed class action settlement:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*See Kemp-DeLisser,* 2016 WL 6542707, at *7-10 (citing *Grinnell* and analyzing factors). "In finding that a settlement is fair, not every factor must weigh in favor of settlement, rather the court should consider the totality of these factors in light of the particular circumstances." *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 138 (S.D.N.Y. 2010) (internal quotation marks and citations omitted). "The weight given to any particular factor will vary based on the facts and circumstances of the case." *Ingles v. Toro*, 438 F. Supp. 2d 203, 211 (S.D.N.Y. 2006). Here, the *Grinnell* factors weigh heavily in favor of final approval of the proposed Settlement.

### 1.     The Stage of the Proceedings and the Amount of Discovery Completed

In evaluating a settlement, "[t]here is no precise formula for what constitutes sufficient evidence to enable the court to analyze intelligently the contested questions of fact. It is clear

---

[9]  NAPG's agreement not to object to an award of attorneys' fees and expenses of up to $3,669,000 is typical. *Malchman v. Davis*, 761 F.2d 893, 905 n.5 (2d Cir. 1985); *Blessing v. Sirius XM Radio Inc.*, No. 11 Civ. 3696, 2012 WL 6684572, at *2 (2d Cir. 2012).

that the court need not possess evidence to decide the merits of the issue, because the compromise is proposed in order to avoid further litigation."  Alba Conte & Herbert Newberg, Newberg on Class Actions § 11.45 (4th ed. 2002).

As discussed above, by the time the Settlement was reached, Class Counsel were well informed of the strengths and weaknesses of their claims and Defendant's defenses.  The parties had conducted extensive discovery, including review of hundreds of thousands of pages of documents and the depositions of numerous corporate representatives and employees of Defendant and several Plaintiffs.  This discovery was reviewed and analyzed both by Plaintiffs' counsel and by leading experts.  This thorough discovery and analysis permitted Plaintiffs (and Defendant) to fully consider and evaluate the Settlement's fairness.  *See Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, No. 01 Civ. 11814, 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004).

> **2.    The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and the Attendant Risks of Litigation**

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case."  *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. Apr. 1987).  Moreover, the Court need only determine whether the Settlement falls within a "'range of reasonableness.'"  *PaineWebber*, 171 F.R.D. at 130 (citation omitted).  Determining whether a settlement is reasonable "is not susceptible of a mathematical equation yielding a particularized sum."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 178 (S.D.N.Y. 2000) *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) (internal citations omitted)).  Indeed, "even a recovery of only a fraction of one percent of the overall damages could be a reasonable and fair

settlement." *Fleisher v. Phoenix Life Ins. Co.,* No. 11 Civ. 8405, 2015 WL 10847814, at *11 (S.D.N.Y. Sept. 9, 2015).

Here, Plaintiffs have achieved a substantial recovery under the Settlement. Plaintiffs' expert Mr. Adamson calculated ***maximum*** damages with respect to NAPG variable rate electricity customers, based on the difference between the variable rate that NAPG charged and the variable rate that ***should*** have been charged. Plaintiffs' experts concluded that the rate that should have been charged was NAPG's cost of goods sold plus a reasonable gross margin of 20%, and that, when compared with what NAPG actually charged and extrapolated through all of NAPG's service areas, $0.015 per kWh was a reasonable estimate of maximum damages. Assuming a jury fully accepted this analysis, the $0.0035 per kWh recovery for electricity customers constitutes 23.3% of these maximum damages, which Plaintiffs respectfully submit constitutes an outstanding result. *Compare In re Checking Account Overdraft Litig.,* 830 F. Supp. 2d 1330, 1350 (S.D. Fla. 2011) (noting that "a 9 percent settlement … is still within the range of reasonableness" in a consumer class action); *Schulte v. Fifth Third Bank,* 805 F. Supp. 2d 560, 583 (N.D. Ill. 2011) (approving settlement representing 10% of maximum damages and noting that "[n]umerous courts have approved settlements with recoveries around (or below) this percentage"); *In re Initial Public Offering Sec. Litig.,* 671 F. Supp. 2d 467 (S.D.N.Y. 2009) (approving settlement with 2% recovery of maximum damages).

Moreover, the overall $16,053,00 available to the Class under this Settlement compares favorably with other, similar claims-made class settlements involving consumer claims against electric suppliers relating to allegedly misleading variable market rate claims. *Compare Wise v. Energy Plus Holdings, LLC*, No. 11-7345 (S.D.N.Y.), ECF Nos. 52 & 74 (providing for a

settlement valued between $12,478,451 and $14,314,142); *In re HIKO*, ECF Nos. 83 & 93 (providing a settlement valued between $7,225,000 and $10,225,000).

The settlement has real value to Class Members on an individual as well as aggregate basis.  Based upon the 16,890 claims fully processed and approved by the Settlement Administrator as of June 8, 2018, the average claimant will receive approximately $50. Approximately 4,700 of the 16,890 processed claims are receiving between $2 and $9.99, which is itself a nontrivial sum.[10]  Approximately 4,500 are receiving between $10 and $29.99; approximately 2,300 are receiving between $30 and $49.99; and another 2,900 are receiving between $50 and $99.99.  Approximately 2,400 Class Members are receiving over $100, and approximately 200 of those are receiving over $300.  Izard Decl. at ¶11.  Accordingly, every Class member is receiving a genuine monetary benefit, and many are receiving hundreds of dollars.  This is an outstanding result, and one that falls well within the range of reasonableness in this hard-fought litigation.

Plaintiffs achieved these results even though NAPG strongly contests Mr. Adamson's analysis and has submitted substantial contrary expert evidence.  There is no guarantee that the jury would accept any, much less all, of Mr. Adamson's analysis.  Moreover, Defendant could prevail on its legal arguments to defeat liability ***entirely***, resulting in ***no*** recovery for class members.  Given this broad range of possible damages, the Settlement Agreement provides a substantial recovery that falls well within the range that courts have traditionally found to be fair and adequate under the law.  In addition, the fact that the Settlement Agreement provides for a

---

[10]  Moreover, the fact that some Class Members are receiving relatively low recoveries demonstrates that many Class Members were not significantly harmed by NAPG's misconduct. This situation both reinforces the value of the recovery Plaintiffs were able to obtain for all Class Members, but also the risk that Plaintiffs would not be able to establish (significant) damages at trial ***at all***.

prompt payment to claimants favors approval of the settlement.  *See Kemp-DeLisser*, 2016 WL 6542707, at *10 (stating "the guaranteed payment of the settlement amount and the SFH and Trinity 15-year guarantee 'increases the settlement's value in comparison to some speculative payment of a hypothetically larger amount years down the road,' had the parties proceeded with litigation") (citing *In re Global Crossing Securities and ERISA Litig.*, 225 F.R.D. 436, 461 (S.D.N.Y. 2004)).

### 3.      The Reaction of the Class Was Overwhelmingly Positive

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy."  *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) (citing *In re American Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001) (citation omitted)).  There is a "strong indication of fairness" where the "vast majority of class members neither objected nor opted out." *Silverstein v. AllianceBernstein, L.P.*, No. 09 Civ. 05904 (LGS), 2013 WL 7122612, at *5 (S.D.N.Y. Dec. 20, 2013) (citation omitted).

Here, although the final opt-out and objection deadlines are approximately two weeks away (June 26, 2018), Class member response to the Settlement thus far has been overwhelmingly positive.  As of June 8, 2018, the Claims Administrator has reported that only twelve Class Members have opted out of the Settlement, and there have been *no* objections to date.  Mahan Decl. at ¶ 12.  That there are presently only a *de minimis* number of opt-outs and objections is especially noteworthy, as "the notice and approval process generally solicits negative feedback regarding a settlement, because it is designed to solicit opt outs and objections by advising class members of the procedures and deadlines for filing such responses with the court. . . . [I]n litigation involving a large class, such as that here, it would be extremely unusual

19

not to encounter objections." *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 197

(S.D.N.Y. 2012) (internal quotation marks and citations omitted); *see also HIKO* Trans. at 16:9-

16 (finding that "reaction of the class as a whole supported approval" because "[t]he low number

of objectors and opt-outs"—only one objector and 108 opt outs out of roughly 186,000 class

members—"indicates that the proposed settlement is fair").  "In fact, the lack of objections may

well evidence the fairness of the Settlement." *Maley*, 186 F. Supp. 2d at 362 (citing *In re*

*PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721

(2d Cir. 1997)); *In re Austrian and German Bank*, 80 F. Supp. 2d at 175.

### 4.      The Risks of Establishing Liability and Damages

In assessing a proposed settlement, the Court should balance the benefits afforded the

Class, including the *immediacy* and *certainty* of a recovery, against the continuing risks of

litigation. *Grinnell*, 495 F.2d at 463.  While Class Counsel believe that Plaintiffs' claims are

meritorious, Class Counsel are both experienced and realistic and understand that the resolution

of liability issues, the results at trial, and the inevitable appeals process are inherently uncertain

in terms of outcome and duration. *See In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104,

126 (S.D.N.Y 1997) ("Litigation inherently involves risks.").  Indeed, "the primary purpose of

settlement is to avoid the uncertainty of a trial on the merits." *Siler v. Landry's Seafood House–*

*North Carolina, Inc.,* No. 13 Civ. 587, 2014 WL 2945796, at *6 (S.D.N.Y. June 30, 2014).

Here, Defendant has raised several arguments that, if accepted by the Court or jury, would

undermine or eliminate Plaintiffs' claims.  For example, NAPG argues that its disclosures with

regard to its rates, particularly those contained in the customer agreements that were provided to class

members, adequately disclose the factors that cause its variable rates to vary.  Defendant also argues

that its customers who have been enrolled with NAPG for considerable time should not recover,

because they have voluntarily paid the rates in question, of which they must have been aware.

Moreover, Defendant vigorously contests Plaintiffs' claims that Defendant charged excessive

amounts for energy, and this issue would be resolved through a "battle of the experts." Although

Plaintiffs believe that their damage model is sound, NAPG's experts have, and will continue to,

challenge the inputs into Plaintiffs' damages model.

Plaintiffs dispute the factual and legal bases of these arguments but, if Defendant can prove

these defenses, Plaintiffs' ability to establish liability is not guaranteed. Indeed, this Court granted

summary judgment to another third party electric supplier in the similar *Richards v. Direct Energy*

(3:14-CV-01724 (VAB)) litigation, on the basis that the relevant contract allowed the challenged

rates. At the time that the Parties here reached the Settlement, NAPG had already moved for

summary judgment in this case based in part on the Court's analysis in *Richards*. Plaintiffs here

respectfully disagree with the Court's ruling in *Richards* as well as its applicability here, but the fact

remains that Plaintiffs and the Class face the substantial risk of recovering ***nothing*** but for the

Settlement. By contrast, the Settlement Agreement avoids the risks inherent in further litigation, and

therefore this factor weighs in favor of preliminary approval.

### 5.    The Risk of Recovery

The ability of Defendant to withstand a substantially greater judgment is by no means

assured. Although Plaintiffs have no concern that NAPG has the ability to pay all claims made

in the context of this Settlement Agreement, based on confidential information produced in

discovery, and the fact that NAPG is essentially an energy broker that merely buys and resells

energy, Plaintiffs have substantial concerns that NAPG could bear the enormously large statutory

and compensatory damages award that could be assessed were the cases to proceed through trial.

In any event, a "defendant['s] ability to withstand a greater judgment, standing alone, does not

suggest that the settlement is unfair." *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9.

### 6.    The Actions Are Complex and Will Be Expensive and Lengthy.

The Settlement Agreement provides substantial monetary benefits to the Settlement Class while avoiding the significant expenses and delays attendant to discovery and motion practice related to summary judgment and class certification.  Indeed, "[m]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian and German Bank*, 80 F. Supp. 2d at 174; *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184-85 (W.D.N.Y. 2005) (same).  Here, the Settlement Class includes all current and former customers of NAPG during a Class Period spanning over 5 years.  Continued litigation would necessitate motions for class certification and for summary judgment, and potentially trial.  Engaging in motion practice under the consumer protection laws of multiple different states would be time-consuming and expensive.  The Settlement, on the other hand, will result in prompt and equitable payments to the Settlement Class, providing important relief to consumers of Defendants' products.  *See HIKO* Trans. at 16:1-8; *In re Hi-Crush Partners L.P. Securities Litig.*, No. 12 Civ. 8557 (CM), 2014 WL 7323417, at *6 (S.D.N.Y. Dec. 19, 2014).

### 7.    Maintaining the Class Action Through Trial May Be Challenging.

NAPG has argued, and will no doubt continue to argue, that purported differences between individual contracts, state laws, and purchaser geographies and rate experiences create individual issues that predominate over class-wide issues.  Moreover, each Class member may have been damaged in differing amounts, depending on the amount of energy used, and the rate and market structures in their geographic areas.  Demonstrating that liability and damages can be handled on a class-wide basis may be challenging (although Plaintiffs are confident that their

expert can develop a data set demonstrating each Class member's damages).  Moreover, even assuming Plaintiffs obtained class certification, Defendants can always move to decertify the class, highlighting the inherent risks and expense of maintaining a class through trial.  *See Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316 (PAC), 2010 WL 5507892, at *5 (S.D.N.Y. Dec. 21, 2010) *aff'd*, 519 F. App'x 1 (2d Cir. 2013); *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143 (ENV) (RER), 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011).  The proposed Settlement avoids the risks inherent in further litigation, and therefore, this factor weighs in favor of final approval.

### D.      NOTICE WAS PROVIDED IN THE BEST PRACTICABLE MANNER

Rule 23(c)(2)(B) requires that Class Members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  The Rule also requires that any such notice clearly and concisely state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through an attorney if the member so desires; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on class members under Rule 23(c)(3).  *Id.*

Here, the Court approved the form and content of the Notice and approved the parties' proposal for distribution of the Notice.  *See* ECF No. 126 at Part II.  The Court further found that the parties' proposal regarding notice to the Class constituted "the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto." *Id.* at 13. The Settlement Administrator provided the approved notice to the class in accord with the timetable ordered by the Court.  *See generally* Mahon Decl. at ¶¶ 6-10.

**IV.     THE COURT SHOULD CERTIFY THE CLASS.**

Plaintiffs moved to preliminarily certify the Class for settlement purposes on January 16, 2018.  *See* ECF Nos. 114-117.  The Court thereafter invited the parties to submit supplemental briefing concerning the Court's jurisdiction and Class representative standing, which Plaintiffs filed on February 9, 2018 (ECF No. 120), followed by notices of additional authority on February 19, 2018 (ECF No. 124) and March 19, 2018 (ECF No. 125).  The Court granted the motion for preliminary approval on March 30, 2018 (ECF No. 126).  For the reasons stated in Plaintiffs' Memorandum of Law in Support of Uncontested Motion for Preliminary Approval of Class Action Settlement (ECF No. 115 at 18-24) and Plaintiff's Supplemental Brief (ECF No. 120) and notices of additional authority (ECF Nos. 124, 125), which are fully incorporated by reference herein, this Court should certify the Class.

**V.     THE COURT SHOULD APPROVE THE REQUESTED AWARD OF ATTORNEYS' FEES AND EXPENSES TO BE PAID BY DEFENDANTS TO CLASS COUNSEL.**

Wholly separate from the $16,053,000 available in direct cash benefits to Class Members, NAPG has agreed to pay Class Counsel up to $3,669,000 in attorneys' fees, costs and other litigation expenses, and lead plaintiff service awards.  This award for fees and expenses merits approval.[11]

**A.     Class Counsel Is Entitled To Compensation**

The Supreme Court has held that "where an attorney succeeds in creating a common fund from which members of a class are compensated for a common injury," the attorney is entitled to a reasonable fee.  *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000)

---

[11]  Fees will be allocated among Class Counsel and Bouchard, Kleinman & Wright P.A., which represented the New Hampshire Plaintiffs individually, per agreement of Counsel.

(citing *Trustees v. Greenough*, 105 U.S. 527 (1881); *Boeing Co. v. Van Gemert*, 444 U.S. 472

(1980)).  Awarding Class Counsel fees "serves the salutary purpose of encouraging counsel to

pursue meritorious claims on behalf of a class of individuals who could not afford to litigate their

individual claims." *Steiner v. Williams*, No. 99 Civ. 10186 (JSM), 2001 WL 604035, at *1

(S.D.N.Y. May 31, 2001).  Indeed, the contingency fee awarded to Class Counsel should be

greater than the fees that the same attorneys would charge their clients in non-contingency cases.

"No one expects a lawyer whose compensation is contingent on success of his services to charge,

when successful, as little as he would charge a client who in advance has agreed to pay for his

services, regardless of success." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 396

(S.D.N.Y. 1999); *In re Veeco Instruments*, No. 05 MD 01695 (CM) (GAY), 2007 WL 4115808,

at *6 (S.D.N.Y. Nov. 7, 2007) (same).[12]

> **B.    The Second Circuit Has Approved Both The Percentage Method**
> **And The Lodestar Method, But The Percentage Method Is Preferred.**

District courts in the Second Circuit may award attorneys' fees to prevailing class

counsel under either a "percentage of the fund" or "lodestar" method to compute fees in common

fund cases.  *See Wal-Mart*, 396 F.3d 96, 121 (2d Cir. 2005); *In re Polaroid*, No. 03 Civ. 8335

(WHP), 2007 WL 2116398, at *2 (S.D.N.Y. July 19, 2007).  However, as this Court has

recognized, "[m]any courts in the Second Circuit favor the percentage of fund method." *Kemp-*

*DeLisser,* 2016 WL 6542707, at *15) (quoting *Wal-Mart*, 396 F.3d at 121).

---

[12] *In re Telik*, *Inc. Sec. Leg.*, 576 F. Supp. 2d 570, 585 (S.D.N.Y. 2008) ("Courts have also
recognized that, in addition to providing just compensation, awards of attorneys' fees from a
common fund serve to encourage skilled counsel to represent those who seek redress for
damages inflicted on entire classes of persons, and to discourage future misconduct of a similar
nature").

### C.      The Requested Fee Is Justified Under the Percentage Method

#### 1.      The Full Value Of The Settlement Fund Available Is Considered

Attorneys' fees awarded as a percentage of a fund should take into consideration the entirety of the fund, not only that portion received directly by the class members.  As the Supreme Court has observed, where plaintiffs obtain a claims-made settlement, they "have recovered a determinate fund for the benefit of every member of the class whom they represent." *Boeing,* 444 U.S. at 479. Absent Class Members' "right to share the harvest of the lawsuit upon proof of their identity, ***whether or not they exercise it***, is a benefit in the fund created by the efforts of the class representatives and their counsel." *Id.* at 480 (emphasis added).  This is true even where a defendant has the right "to the return of money eventually unclaimed[,] contingent on the failure of absentee class members to exercise their present rights" to the money. *Id.* at 482.  Accordingly, the Second Circuit held in *Masters v. Wilhelmina Model Agency, Inc.* 473 F.3d 423, 437 (2d Cir. 2007), that "[t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class.  An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available whether claimed or not.  We side with the circuits that take this approach."  The Court further noted that "[o]ur own cases refer to 'percentage of the fund,' and 'percentage of the recovery.'  We take these references to be to the whole of the Fund." *Id.* (emphasis in original, citations omitted).

This Court has routinely cited *Boeing* and *Masters* to hold that class counsel are entitled to a percentage of the ***entire*** fund their efforts create, regardless of how much absent class members claim from the fund and whether unclaimed amounts revert to Defendants.  *See Kiefer v. Moran Foods, LLC,* No. 12-cv-756, 2014 WL 3882504, at *8 (D. Conn. Aug. 5, 2014) (Young, J.) ("In applying the common fund method, the Supreme Court, the Second Circuit, and other Circuit Courts, have held that it is appropriate to award attorneys' fees as a percentage of

the entire maximum gross settlement fund, even where amounts to be paid to settlement class members who do not file claims will revert to the Defendants"); *Bozak v. FedEx Ground Package Sys., Inc.,* No. 11-cv-00738, 2014 WL 3778211, at *6 (D. Conn. July 31, 2014) (Chatigny, J.) (same); *Caitflo LLC v. Sprint Communications Co., LP,* No. 11-cv-00497, 2013 WL 3243114, at *2 (D. Conn. June 26, 2013) (Eginton, J.) (same); *Aros v. United Rentals, Inc.*, No. 10 Civ. 73, 2012 WL 3060470, at *5 (D. Conn. July 26, 2012) (Hall, J.) (same).  Courts elsewhere in this Circuit also routinely follow *Masters* and *Boeing.  See Hart v. RCI Hospitality Holdings, Inc.,* No. 09 Civ. 3043, 2015 WL 5577713, at *17 (S.D.N.Y. Sept. 22, 2015) ("Circuit precedent supports taking the gross monetary settlement into account when calculating the percentage of the fund … even when unclaimed funds were to revert to the defendants"); *Fleisher v. Phoenix Life Ins. Co.,* No. 11-cv-8405, 2015 WL 10847814, *16 n.10 (S.D.N.Y. Sept. 9, 2015) (citing *Masters*)*; In re Nigeria Charter Flights Litig.,* No. 04-cv-304, 2011 WL 7945548, at *5 (E.D.N.Y. Aug. 25, 2011) (citing *Masters* and rejecting argument "that due to the reversionary aspect of the fund, the proper analysis is to compare the fees sought to the actual claims made by the class members").[13]

---

[13] *See also Velez v. Novartis Pharm. Corp.*, No. 04 Civ. 09194 (GEL), 2010 WL 4877852, at *21 (S.D.N.Y. Nov. 30, 2010) (quoting *Masters*, 473 F.3d at 437) ("[T]his Circuit has ruled that '[a]n allocation of fees by percentage should therefore be awarded on the basis of total funds made available whether claimed or not.'"); *Dahingo v. Royal Caribbean Cruises, Ltd.*, 312 F. Supp. 2d 440, 443 (S.D.N.Y. 2004) (noting that attorneys' fees equivalent to one-third of common fund of $18.4 million was approved notwithstanding that only $5.6 million of the $18.4 was claimed by class members with the remaining $11.8 million unclaimed and reverting to the defendants); 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 14:6, at 570 (4th ed. 2002) (stating that *Boeing* settled the issue of whether the benchmark common fund amount for fee award purposes is made up of the amount claimed by class members or the amount potentially available to class members by ruling that class counsel are entitled to a reasonable fee based on the funds potentially available to be claimed, regardless of the amount actually claimed).

Moreover, it is appropriate to include ***both*** the amount made available to the class ***and*** the amount of attorneys' fees and expenses requested to determine the value of the total fund for purposes of determining the percentage of the fund the fee request represents. *See, e.g.*, *Torres*, 519 F. App'x 1,5 (2d Cir. 2013); *Johnston v. Comerica Mortgage Corp.*, 83 F.3d 241, 246 (8th Cir. 1996) ("Even if the fees are paid directly to the attorneys, those fees are still best viewed as an aspect of the class' recovery."); Manual for Complex Litigation, Fourth, § 21.71 p. 525 ("If an agreement is reached on the amount of a settlement fund and a separate amount for attorney fees and expenses . . . the sum of the two amounts ordinarily should be treated as a settlement fund for the benefit of the class ....").[14]

### 2.    The Fee Award Is Supported By the Goldberger Factors.

Under *Goldberger*, a court setting a percentage of the recovery as a fee considers six factors: (1) the time and labor expended by counsel; (2) the magnitude and complexity of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Goldberger*, 209 F.3d at 50. As this Court has recognized, where, as here, "the parties agree to a fee that is to be paid separately by the Defendant[] rather than one that comes from, and therefore reduces, the Settlement Fund available to the class, the Court's fiduciary role in overseeing the award is greatly reduced

---

[14] *See also Hubbard v. Donahoe*, No. 03 Civ. 1062 (RJL), 2013 WL 3943495, at *4, 8 (D.D.C. July 31, 2013) (collecting cases); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1072 (S.D. Tex. 2012); *Lopez v. Youngblood*, No. 07 Civ. 0474 (DLB), 2011 WL 10483569, at *12 (E.D. Cal. Sept. 2, 2011) (awarding 28.5% of the recovery where attorneys' fees were paid separate and apart from benefit to the class and citing with approval *Johnston* and *In re Vitamins Antitrust Litig.*, No. 99 Civ. 197 (TFH), 2001 WL 34312839, at *4 (D.D.C. July 16, 2001)); *Cohen v. Chilcott*, 522 F. Supp. 2d 105, 121 (D.D.C. 2007).

because the danger of conflicts of interest between attorneys and class members is diminished." *Kemp-DeLisser,* 2016 WL 6542707, at *14 (internal quotation marks and citation omitted).

Here, as discussed below, the aggregate $3,669,000 sought by Class Counsel includes $474,194.88 in reasonable and necessary expenses and $40,000 in requested lead plaintiff service awards. Accordingly, Class Counsel are seeking $3,154,805.12 in attorneys' fees, constituting approximately 16% of the $19,722,000 settlement value (and 19.7% of the $16,053,000 available for cash payments to the Class). This fee is fully justified under *Goldberger.*

### a.    Counsel's Time and Labor

There is no question that Class Counsel expended significant time and effort to bring this litigation to a successful resolution. As detailed above, counsel have devoted substantial time and effort to this case for over many years. Even when courts do not employ the lodestar method to determine fees, they often consider the lodestar calculation in evaluating a requested percentage fee. *Goldberger*, 209 F.3d at 50. Here, Class Counsel's contemporaneous records indicate that they collectively spent 6,805.4 hours of attorney time with an aggregate lodestar of $4,018,003.00. *See* Izard Decl. at ¶ 14; Blankinship Decl. at ¶ 22; Gordon Decl. at ¶ 4; Mendelsohn Decl. at ¶ 16; Schelkopf Decl. at ¶¶ 16, 26 and Ex. B.[15] Settlement Class Counsel's fee request, thus, is only about 79% of their lodestar (*i.e.,* a negative multiplier of 0.79), far less

---

[15] The Supreme Court has approved the use of current hourly rates to compensate for inflation and loss of use of funds. *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989). *See also In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163–64 (S.D.N.Y. 1989) (citing cases); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 n.25 (S.D.N.Y. 1998). Moreover, the hourly rates for Settlement Class Counsel's attorneys are the same as the regular current rates charged for services in non-contingent matters and/or that have been accepted and approved in class action litigation in other courts throughout the country. *See* Izard Decl. at ¶ 16; Blankinship Decl. at ¶ 25; Gordon Decl. at ¶ 6; Mendelsohn Decl. at ¶ 19; Schelkopf Decl. at ¶ 19.

than the multipliers of three, four or even five routinely approved in other cases. *Kemp-DeLisser,* 2016 WL 6542707, at \*17 (approving 2.77 multiplier and quoting *Wal-Mart,* 396 F.3d at 123, for proposition that that multipliers of 3.5 have been "deemed reasonable); *In re Telik*, 576 F. Supp. 2d at 590 (noting that a multiplier of 4.65 was "well within the range awarded by courts in this Circuit and courts throughout the country").[16]

### b.    The Relationship of the Requested Fee to the Settlement

At 16% of the total Settlement value, the attorneys' fees that Class Counsel seek and which NAPG has agreed to pay are at the low end of the spectrum of fee awards repeatedly approved by the Courts of this Circuit. As this Court has noted, fees of 25% to one-third are routinely approved. *Kemp-DeLisser,* 2016 WL 6542707, at \*17. Indeed, many cases award 33% of the settlement value. "The one-third amount that plaintiffs request is typical of awards in this Circuit." *Bozak v. FedEx Ground Package Sys., Inc.,* No. 3:11-CV-00738-RNC, 2014 WL 3778211, at \* 7 (D. Conn. July 31, 2014); *Capsolas v. Pasta Resources Inc.*, No. 10 Civ. 5595, 2012 WL 4760910, at \*8 (S.D.N.Y. Oct. 5, 2012); *Willix v. Healthfirst Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at \*7 (E.D.N.Y. Feb. 18, 2011).[17] Accordingly, a 16% fee, well below the 33% standard, is reasonable

---

[16] *See also Zeltser v. Merrill Lynch & Co., Inc.*, No. 13 Civ. 1531 (FM), 2014 WL 4816134, at \*10 (S.D.N.Y. Sept. 23, 2014) (multiplier of 5.1 "falls within the range granted by courts"); *Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472, 2013 WL 1209563, at \*9 (S.D.N.Y. Mar. 21, 2013) (awarding lodestar multiplier of 3.8, holding it "well within the range of multipliers that have been granted by courts in this Circuit and elsewhere" and noting that "Courts regularly award lodestar multipliers of up to eight times lodestar, and in some cases, even higher multipliers.") (collecting cases); *Spicer v. Pier Sixty LLC,* No. 08 Civ. 10240 (LBS), 2012 WL 4364503, at \*4 (S.D.N.Y. Sept. 14, 2012) ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts.") (quoting *In re Telik*, 576 F. Supp. 2d at 590); *deMunecas v. Bold Food, LLC*, No. 09 Civ. 440 (DAB), 2010 WL 3322580, at \*10 (S.D.N.Y. Aug. 23, 2010) ("Courts regularly award lodestar multipliers from 2 to 6 times lodestar.").

[17] *See also In re Marsh*, 265 F.R.D. at 149; *Hernandez*, 2013 WL 1209563, at \*8; *Beckman v. KeyBank, N.A.*, No. 12 Civ. 7836 (RLE), 2013 WL 1803736, at \*12 (S.D.N.Y. Apr. 29, 2013); *Hayes v. Harmony Gold Mining Co.*, No. 08 Civ. 03653 (BSJ), 2011 WL 6019219, at \*1 (S.D.N.Y. Dec. 2, 2011), *aff'd*, 509 F. App'x 21 (2d Cir. 2013); *Mohney v. Shelly's Prime Steak,*

in relation to the settlement, especially given the complexity and novelty of the case, the attendant litigation risks, and the effort Class Counsel expended to reach the Settlement, as discussed above.

### c.      The Risk Of Litigation

As discussed above, Class counsel and Plaintiffs faced obstacles in successfully prosecuting this case.  The Second Circuit has recognized that the risk involved in prosecuting a class action is an important consideration in determining an appropriate fee award. The case law contains many examples of unsuccessful class actions that provided no relief to the putative class and no fee for class counsel.  *See, e.g.*, *In re Veeco Instruments*, 2007 WL 4115808, at *6 (collecting cases). This factor thus reflects that cases taken on a contingent fee basis entail risk of non-payment for the attorneys that prosecute them, and it embodies a principle that contingency work is entitled to greater compensation than non-contingency work.  *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 592 (S.D.N.Y. 2008); *In re Lloyd's Am. Tr. Fund Litig.*, No. 96 Civ. 1262 (RWS), 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002), *aff'd sub nom. Adams v. Rose*, No. 03 Civ. 7011, 2003 WL 21982207 (2d Cir. Aug. 20, 2003) ("[C]ontingent fee risk is the single most important factor in awarding a multiplier[.]").  As the Second Circuit has observed:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

*In re Hi-Crush Partners*, 2014 WL 7323417, at *15 (quoting *Grinnell Corp.*, 495 F.2d at 470).

---

*Stone Crab & Oyster Bar*, No. 06 Civ. 4270 (PAC), 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (noting that "Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit"); *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452 (RLE), 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (fee equal to one-third of the settlement fund is reasonable and "consistent with the norms of class litigation in this circuit") (citing cases).

Class Counsel incurred 100% of the risk, devoting their time and labor gathering evidence of NAPG's suspected wrongdoing, evaluating NAPG's potential liability, analyzing potential legal theories, drafting the complaints, and engaging in substantial motion practice and discovery and investigation. Throughout, there was no assurance of success or compensation. The requested fee award is entirely reasonable in light of the risks incurred by Class Counsel.

### d.       The Magnitude and Complexity Of the Litigation

The requested fee award is reasonable in light of the magnitude and complexity of the litigation. The Class itself comprises 491,126 members (Mahan Decl. at ¶ 5) and NAPG agreed to a settlement with a total cash value of $16,053,000 (not including the value of separate attorneys' fee and expense award). By any measure, the magnitude of the case is substantial, fully justifying Class Counsel's investment of time and labor, and fully merits the requested fee award.

In addition, the litigation involves a number of complex legal and factual issues. The magnitude and complexity of this action is even greater because of the multiple states in which NAPG is operating, differences in state law, the differing contracts that NAPG used in each state and over time, and the prevailing electric and gas rates over time. If not for the Settlement, the need to research, brief, and develop factual submissions on class certification and summary judgment relating to these issues would increase the expense, complexity, and duration of the litigation. Moreover, trial preparation would have required countless hours of additional work, including preparing fact and expert witnesses, identifying exhibits, preparing proposed jury instructions, and preparing cross-examination outlines. The trial itself would consume significant judicial resources and would engender additional motion practice (including evidentiary motions and any dispositive motions filed during or at the close of trial). Further, an

appeal would have added to the complexity of the litigation. This is especially likely in view of the experience of defense counsel. *See In re Brown Co. Sec. Litig.*, 355 F. Supp. 574, 592–93 (S.D.N.Y. 1973). The magnitude and complexity of the litigation weigh heavily in favor of the requested fee award.

<strong>e.      The Quality Of Representation</strong>

The quality of Class Counsel's representation is reflected in the reputation of Class Counsel; the experience of the attorneys principally involved in these action; and above all, the manner in which they prosecuted these actions from the pleadings, through motion practice and discovery, to the settlement negotiations and the instant motion for final approval.

Class Counsel enjoy a strong reputation in the area of complex and class action litigation. Moreover, as demonstrated by their firm resumes, the various attorneys comprising Class Counsel have been appointed class counsel in numerous other cases and are highly experienced and knowledgeable in the area of complex and class action litigation. *See* Izard Decl. at Ex. A; Blankinship Decl. at Ex. 1; Mendelsohn Decl. at Ex. A; Schelkopf Decl. at Ex. A.

The Settlement negotiated with Defendants is a highly favorable outcome for the Class, and is the direct result of the creativity, diligence, hard work, and skill brought to bear by Plaintiffs' counsel at every stage of the proceedings. Throughout the litigation, Plaintiffs' counsel have put the best interests of the Class foremost, negotiating the most favorable settlement terms possible through a protracted mediation and negotiation process. Plaintiffs' counsel's exemplary prosecution of this class action weighs strongly in favor of the proposed fee award.

The high quality of the opposition that Plaintiffs' counsel faced is further testament to the quality of Plaintiffs' counsel's representation. NAPG is represented by skilled and highly

regarded counsel from Gordon & Rees LLP, who have vigorously advocated for their client before this Court as the docket sheet in this matter demonstrates.  Courts have repeatedly recognized that the caliber of the opposition faced by plaintiffs' counsel should be taken into consideration in assessing the quality of the plaintiffs' counsel's performance, and in these cases, it supports final approval of the requested fee.  *See, e.g.*, *In re Marsh*, 265 F.R.D. at 148.

### f.      Public Policy Considerations

Strong public policy supports rewarding counsel for bringing successful consumer protection litigation.  *See, e.g., In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02 Civ. 3400 (CM) (PED), 2010 WL 4537550, at *29 (S.D.N.Y. Nov. 8, 2010); *Maley*, 186 F. Supp. 2d at 373; *Hicks*, 2005 WL 2757792, at *9.  The Settlement provides substantial benefits to the public as well as the individual NAPG consumers.  It serves public policy as embodied in state consumer fraud statues and the common law of contract by compensating consumers, holding NAPG accountable for its allegedly misleading terms of service, and deterring future deceptive practices by NAPG.  This deterrent effect, moreover, should carry over to other energy suppliers, who will be on notice that they will suffer unwanted cost, inconvenience, bad publicity, and legal exposure.  "Plaintiffs may find it difficult to obtain representation if attorneys know their reward for accepting a contingency case is merely payment at the same rate they could obtain risk-free for hourly work, while their downside is no payment whatsoever."  *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 246 (4th Cir. 2010).

Moreover, the fee request does not bestow a windfall on Class Counsel (*see* lodestar cross-check above).  Therefore, the policy of awarding fees in a lower range to account for economies of scale and to prevent windfalls is not at issue here.  Simply put, there is no reason to depart from the amount that NAPG has agreed to pay, as this amount falls squarely within the

range of fees normally approved within this Circuit under either the percentage of the fund or lodestar methodology, and any reduction would be against public policy as it would discourage future class counsel from bringing similar cases and reward the alleged wrongdoer for the benefit of neither the Class or the public at large.

### g.      Reaction of the Class

Although not a formal *Goldberger* factor, the reaction by members of the Class is also entitled to great weight by the Court. *See In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 996 (D. Minn. 2005) "[N]umerous courts have [noted] that the lack of objection from members of the class is one of the most important" factors in determining reasonableness of the requested fee. *In re Prudential Sec. Ltd. P'ships Litig.*, 985 F. Supp. 410, 416 (S.D.N.Y. 1997). Here, 491,126 notices were sent to Class Members. The notices clearly set forth that Class Counsel would apply for an award of fees and expenses of up to $3,669,000. Of all those Settlement Class Members who have received individual Notice, to date only twelve have opted out and none have filed an objection. Class Counsel will inform the Court of the final tallies once the deadline for objections and requests for exclusion have passed, but as matters stand now, the response of the Class is extraordinarily favorable.

### D.      The Fee Is Justified Under the Lodestar/Multiplier Method

Application of the lodestar method confirms the reasonableness of Class Counsel's request. The Second Circuit has advised that it remains potentially useful as a "cross-check" against the percentage method. *Goldberger*, 209 F.3d at 50. Under the lodestar method, the court multiplies the number of hours each attorney spent on the case by each attorney's reasonable hourly rates, and then the court adjusts that lodestar figure (by applying a multiplier) "to reflect litigation risk, the complexity of the issues, the contingent nature of the engagement,

the skill of the attorneys, and other factors." *In re Flag Telecom Holdings*, 2010 WL 4537550, at

*23.  As discussed above, lodestar multiples of over 4 are routinely awarded by courts.

Accordingly, the fee requested here, with a negative lodestar multiplier of only 0.79, is more

than justified under the lodestar method.

     E.     **The Fee Request Includes Class Counsel's Reasonable and Necessary Expenses**

     The Notice provides that Class Counsel may seek up to $3,669,000 in fees and expenses

(and lead plaintiff service awards).  *See* Mahan Decl. at Exs. A, B.  Here, in addition to their fee

request, Class counsel incurred a total of $474,194.88 in expenses in prosecuting this litigation.

*See* Izard Decl. at ¶ 17, Blankinship Decl. at ¶ 22, Mendelsohn Decl. at ¶ 21; Schelkopf Decl. at

¶ 21.  All of the expenses were reasonable and necessary to the prosecution of these actions, and

are of the type that law firms typically bill to their clients and that courts typically approve for

reimbursement.[18]  By far the largest component of these expenses involve payment of the cost of

experts who spent innumerable hours reviewing documents from NAPG and third parties and

creating models for determining injury and damages.  *See, e.g.,* Izard Decl. at ¶ 17.  Accordingly,

Class Counsel respectfully submit that the requested $474,194.88 award to cover Class

Counsel's expenses is fair and reasonable.  *See, e.g.*, *In re Sony Corp. SXRD Rear Projection TV*

---

[18] *See, e.g.*, *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 WL 313474, at *24 (S.D.N.Y. Feb. 1, 2007) (awarding expenses for "computer research, reproduction/duplication, secretarial overtime, phone/fax/postage, messenger/overnight delivery, local transportation/meals, filing fees and attorney services") (internal quotations omitted); *In re Veeco Instruments*, 2007 WL 4115808, at *10 (awarding expenses including "consultant and expert fees, photocopying of documents, mediation fees, court filing fees, deposition transcripts, fees for service of subpoenas to witnesses, on-line research, creation of a document database, messenger service, postage and next day delivery, long distance and facsimile expenses, transportation, [and] travel"); *In re China Sunergy*, No. 07 Civ. 7895 (DAB), 2011 WL 189971, at *6 (S.D.N.Y. May 13, 2011) (same).

*Mktg., Sales Practices and Products Liab. Litig.*, No. 09 MD 2102 (RPP), 2010 WL 3422722, at

*8-9 (S.D.N.Y. Aug. 24, 2010) (approving flat payment covering fees and expenses).

> ### F.  THE COURT SHOULD APPROVE THE REQUESTED SERVICE AWARDS

The Notice also provides that Class Counsel may seek up to $5,000 in service awards for

each Plaintiff.  *See* Mahon Decl. at Exs. A, B.  Providing named plaintiff enhancement awards,

also known as service awards, to consumers who come forward to represent a class is a

necessary and important component of any class action settlement.  *See Hall v. ProSource*

*Technologies, LLC*, No. 14 Civ. 2502 (SIL), 2016 WL 1555128, at *9 (E.D.N.Y. Apr. 11, 2016)

("Courts regularly grant requests for service awards in class actions to compensate plaintiffs for

the time and effort expended in assisting the prosecution of the litigation, the risks incurred by

becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs.")

(internal quotations and citations omitted); *Viafara v. MCIZ Corp.*, No. 12 Civ. 7452 (RLE),

2014 WL 1777438, at *16 (S.D.N.Y. May 1, 2014); *Elliot v. Leatherstocking Corp.*, No. 10 Civ.

0934 (MAD) (DEP), 2012 WL 6024572, at *7 (N.D.N.Y. Dec. 4, 2012).

Plaintiffs' counsel respectfully request that the Court approve the payment of Service

Awards to the eight named Plaintiffs in the amount of $5,000.00 each in recognition of their

efforts on behalf of the Class.  Pursuant to the Settlement Agreement, NAPG has agreed to pay

these awards using its own resources, which means, as with Class Counsel's request for

attorneys' fees, these payments will not reduce the benefits provided to Class Members.  The

requested payments are well-deserved and fall well within the range of service awards approved

in prior cases.  *Polaroid*, 2007 WL 2116398, at *3 (citing *Dornberger v. Metropolitan Life Ins.*

*Co.*, 203 F.R.D. 118 (S.D.N.Y. 2001)); *see also Karic v. Major Automotive Companies, Inc.*, No.

09 Civ. 5708 (CLP), 2016 WL 1745037 at *8 (E.D.N.Y. Apr. 27, 2016) (collecting cases and

approving service awards of $20,000 each to seven named plaintiffs); *Puglisi v. TD Bank, N.A.*,
2015 WL 4608655, at *1 (E.D.N.Y. July 30, 2015) (approving service awards of $15,000 each
for each two named plaintiffs and $10,000 each for three other named plaintiffs); *Hernandez v.
Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472, 2013 WL 1209563, at *10 (S.D.N.Y. Mar. 21,
2013) (approving service awards of $15,000 and $13,000 to class representatives).  Moreover, as
with the fee request, the service award request was subject to arm's length negotiations between
parties and was adequately disclosed in advance to the Class.

Each Plaintiff voluntarily submitted him- or herself to public scrutiny by bringing a class
action claim.  Plaintiffs reviewed and discussed with Class Counsel the pleadings, discovery
demands, discovery responses, and memoranda of law; conferred with their respective counsel
regarding the status of the cases and the settlement negotiations (including, in one instance,
personal attendance at one of the mediation sessions), always encouraging Class Counsel to
obtain the best possible result for the absent Class Members; and in most instances sat for
depositions and/or produced document discovery.  *See, e.g.,* Izard Decl. at ¶ 12.  Plaintiffs'
participation was substantial and indispensable.

## <u>CONCLUSION</u>

Plaintiffs respectfully request that the Court finally approve the Settlement Agreement; certify the Settlement Class; enter the proposed Final Approval Order in the form to be submitted following the June 26, 2018, close of the claims, opt-out, and objection period; and approve the requested attorneys' fees and expenses and named Plaintiff Service Awards.

Dated: June 11, 2018

**Plaintiffs,**

By: */s/ Robert A. Izard*
Robert A. Izard
Craig A. Raabe
Seth R. Klein
**Izard Kindall & Raabe, LLP**
29 South Main St., St. 305
West Hartford, CT 06107

D. Greg Blankinship
Todd S. Garber
Antonino B. Roman
**Finkelstein, Blankinship, Frei-Pearson & Garber, LLP**
445 Hamilton Avenue, Suite 605
White Plains, New York 10601

Matthew R. Mendelsohn
**Mazie Slater Katz & Freeman, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068

Matthew D. Schelkopf
**McCune Wright Arevalo LLP**
555 Lancaster Avenue
Berwyn, PA 19312

<u>**CERTIFICATE OF SERVICE**</u>

I, Seth R. Klein, hereby certify that on this 11th day of June, 2018, the foregoing was filed electronically.  Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this document though the court's CM/ECF system.


/s/ Seth R. Klein
Seth R. Klein